

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00080-CV

_____

DANNY DIKE, Appellant

V.

PELTIER CHEVROLET, INC., Appellee

On Appeal from the County Court at Law No. 3
Smith County, Texas
Trial Court No. 57,614-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Peltier Chevrolet, Inc., apparently upset with multiple lawsuits brought against it by the Weinstein Law Firm, sought sanctions against Jeffrey Weinstein, the principal in the firm, James Owen, his employee or associate, and Danny Dike, their client. This is an appeal from an award of sanctions on behalf of Peltier against Weinstein, Owen, and Dike.

## I.   FACTUAL AND PROCEDURAL HISTORY

Dike had purchased a 2005 Chevrolet Colorado from Peltier on September 14, 2005; as a part of the deal, Peltier had caused the financing to be arranged through a retail installment transaction (the transaction).[1]   Over three years later (March 4, 2009), Dike formally retained his attorneys to represent him with respect to certain claims against Peltier arising from the transaction.   On January 19, 2010, Dike filed his original petition alleging certain promises were made by Peltier to him at the time of the transaction.   Dike alleged fraud, negligent misrepresentation, money had and received, intentional infliction of emotional distress, and promissory estoppel as a result of the 2005 automobile purchase.   Attorneys Weinstein and Owen were listed on the petition as representing Dike, but only Owen signed the petition.   In his petition, Dike alleged that Peltier's fraud "was inherently undiscoverable."

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

2

Thereafter, on April 23, 2010, Peltier filed its traditional motion for summary judgment alleging the statute of limitations barred Dike's claims. Peltier maintained that Dike's causes of action accrued in 2005 at the time of the transaction and, therefore, were all barred by the relevant two-year and four-year limitations statutes. Rather than filing a response to the motion for summary judgment, Dike filed a motion to nonsuit his claims; those claims were nonsuited without prejudice.

Peltier then filed a motion for sanctions under Section 10.001 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure, asserting that Dike's suit was frivolous and filed in bad faith for the purpose of harassment. Peltier argued that Dike should have known his claims were barred by the statute of limitations. The trial court conducted a hearing on the motion for sanctions, in which Dike agreed his claims were subject to two- and four-year statutes of limitations. Dike maintained, however, that because his claims were inherently undiscoverable and information regarding his claims was fraudulently concealed from him, the accrual of his claims did not begin until such time as they were discovered.

The trial court rejected this argument, primarily because Dike concedes he discovered his claims in March 2009, some six months before the four-year statute of limitations for his fraud claims expired.[2] The trial court granted the motion and sanctioned Dike, Owen, and Weinstein

---

[2]The following exchange took place at the hearing between the trial court and the attorney for Dike:

> THE COURT: Well, let me ask you this: Discovery Rule cases -- are there any Discovery Rule cases that say when a person discovers a claim within the limitations period but then

$15,353.00, representing Peltier's attorneys' fees in defending Dike's claims. The sanctions were imposed jointly and severally against Dike and his attorneys.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

We review the imposition of sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). Under this standard, courts view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action. *In re Liu*, 290 S.W.3d 515, 519 (Tex. App.—Texarkana 2009, orig. proceeding). "An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Low*, 221 S.W.3d at 614. A trial court abuses its discretion in awarding sanctions only if the order is based on an erroneous assessment of the evidence or the law. *Dolenz v. Boundy*, 197 S.W.3d 416, 421 (Tex. App.—Dallas 2006, pet. denied).

Rule 13 authorizes the imposition of sanctions against an attorney, a represented party, or both, who filed a pleading that is either: (1) groundless and brought in bad faith; or (2) groundless and brought to harass. TEX. R. CIV. P. 13; *see also Rudisell v. Paquette*, 89 S.W.3d 233, 236 (Tex.

---

doesn't assert the claim within the limitations period, somehow that buys them an extra four years or an extra two years?

MR. WALSH: I haven't seen the case law.

4

App.—Corpus Christi 2002, no pet.). The rule defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13. Sanctions may only be imposed for good cause under Rule 13, the particulars of which must be stated in the order. TEX. R. CIV. P. 13; *Rudisell*, 89 S.W.3d at 237.

Similarly, to award sanctions under Chapter 10, it must be shown that: (1) the pleading or motion was brought for an improper purpose; (2) there were no grounds for the legal arguments advanced; or (3) the factual allegations or denials lacked evidentiary support. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (Vernon 2002); *Low*, 221 S.W.3d at 614; *Armstrong v. Collin County Bail Bond Bd.*, 233 S.W.3d 57, 62 (Tex. App.—Dallas 2007, no pet.). Chapter 10 specifies that one of the aims for imposition of sanctions for the filing of frivolous or groundless pleadings is to "deter repetition of the conduct or comparable conduct by others similarly situated." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(b) (Vernon 2002). We construe the phrase "improper purpose" as the equivalent of "bad faith" under Rule 13. *See* TEX. R. CIV. P. 13; *cf. Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors*, 198 S.W.3d 300, 321 (Tex. App.—Texarkana 2006, pet. denied) ("nonfrivolous" requirement is same as "good faith" requirement); *Elwell v. Mayfield*, No. 10-04-00322-CV, 2005 WL 1907126, at *5 (Tex. App.—Waco Aug. 10, 2005, pet. denied) (mem. op.) (same). An order imposing a sanction under Chapter 10 "shall describe . . . the conduct the court has determined violated Section 10.001

5

and explain the basis for the sanction imposed." TEX. CIV. PRAC. & REM. CODE ANN. § 10.005 (Vernon 2002).

In determining whether sanctions are appropriate, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied); *Alejandro v. Robstown Indep. Sch. Dist*., 131 S.W.3d 663, 669 (Tex. App.—Corpus Christi 2004, no pet.). Courts should presume parties and their counsel file all papers in good faith, and the party seeking sanctions must overcome that presumption. *See* TEX. R. CIV. P. 13; *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993). The party seeking sanctions has the burden of showing its right to relief. *Tanner*, 856 S.W.2d at 731; *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 668 (Tex. App.—Dallas 2003, no pet.).

## III.    ANALYSIS OF POINTS OF ERROR

On appeal, Dike claims (1) the trial court abused its discretion in assessing sanctions against him, absent any evidence he did anything other than entrust legal representation to his lawyers; (2) the trial court abused its discretion in assessing sanctions against Weinstein absent evidence of his involvement in the petition on which the sanctions order is founded; and (3) the trial court abused its discretion in assessing any sanctions because the claims were not groundless and had a nonfrivolous legal basis. We initially address Dike's contention that the trial court abused its discretion in assessing sanctions based on the record before us.

**A.      The Trial Court Erred in Assessing Sanctions Under Rule 13**

To impose sanctions under Rule 13 of the Texas Rules of Civil Procedure, the proponent of sanctions must establish that the suit was groundless and brought (1) in bad faith or (2) for purposes of harassment.   TEX. R. CIV. P. 13.   A pleading is groundless when it has no basis in law or in fact.   TEX. R. CIV. P. 13.

*(1)      Peltier Failed to Establish that Dike's Petition Was Groundless*

The party seeking sanctions has the burden of showing his right to relief.   *Tanner*, 856 S.W.2d at 731.   Groundlessness turns on the legal merits of a claim.   *Robson*, 267 S.W.3d at 405. Thus, in order to establish Dike's claim was groundless, Peltier had the burden of showing that the claim had no legal merit, i.e., that Dike's claim had no basis in law or fact and was not warranted by good faith argument for the extension, modification, or reversal of existing law.   TEX. R. CIV. P. 13.   Further, a lawsuit is "groundless," as used in Rule 13, if "there is no arguable basis for the cause of action."   *Attorney Gen. of Tex. v. Cartwright*, 874 S.W.2d 210, 215 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

Dike's original petition asserted, among other things, claims of fraud in connection with the purchase of a motor vehicle from Peltier in an installment transaction.[3]   More specifically, the petition alleged that Peltier made "overt false statements of material facts" and failed to "disclose

---

[3]The factual background set forth in the petition is less than crystal clear, but generally alleges that Peltier committed fraud in connection with representations made and information withheld regarding the financing terms of Dike's purchase, which were arranged and implemented by Peltier.

7

material facts" required to be disclosed, and that the resulting harm was inherently undiscoverable. The basis for the imposition of sanctions rested primarily on the trial court's finding that the petition alleged time-barred causes of action, which, by definition, lacked legal merit.[4]  In

---

[4]The sanctions order includes findings in support of sanctions under Section 10.004 of the Texas Civil Practice and Remedies Code, Rules 13 and 215 of the Texas Rules of Civil Procedure, and the court's inherent power:

1. Plaintiff entered into the transaction forming the basis of the above-captioned suit on September 14, 2005. Plaintiff executed an attorney-fee agreement with his counsel on March 4, 2009. The applicable statutes of limitations ran, . . . on all the causes of action Plaintiff and his attorneys asserted in the Original Petition of the above-captioned suit on September 14, 2009. Plaintiff and Plaintiff's counsel filed the Original Petition on January 19, 2010. Thus, Plaintiff and Plaintiff's counsel alleged time-barred causes of action in the Original Petition.

2. The Original Petition was thus signed in violation of section 10.001 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13.

3. Plaintiff and his attorneys' implicit assertion in the Original Petition that the lawsuit was timely-filed under the applicable statutes of limitations is frivolous because it was (1) presented for the purpose of harassment, (2) was not warranted by law, and/or (3) had no, and was unlikely to have any, basis in fact.

4. Plaintiff and his attorneys' implicit assertion in the Original Petition that the lawsuit was timely-filed under the applicable statutes of limitations is groundless because it had no basis in law or fact and was not warranted by a good faith argument for extension, modification, or reversal of existing law.

5. A reasonable inquiry into the applicable statutes of limitations and into the basic operative facts of this lawsuit shows that the Original Petition was time-barred when filed and that no basis exists for filing suit.

6. Plaintiff and his attorneys did not make a reasonable, duly diligent inquiry into the aforementioned law and facts before filing the Original Petition. Plaintiff's attorneys could have readily obtained the requisite knowledge to ascertain that the lawsuit was time-barred by speaking to their client and reviewing the installment sales contract at issue.

7. Plaintiff's attorneys regularly file similar lawsuits against automobile dealership [sic] across Texas in Texas courts and thus have extensive working knowledge of the statutes of limitations applicable to the causes of actions asserted in Plaintiff's Original Petition. For the same reason, Plaintiff's attorneys are charged with knowledge of such statutes of limitations.

8

response to the motion for sanctions, Dike relied on the discovery rule, alleging that the statute of limitations did not begin to run on his claims until such time as they were discovered, said claims being "inherently undiscoverable" and fraudulently concealed by Peltier.

8. Any additional facts adduced hereafter in discovery or otherwise are highly unlikely to establish a basis for filing this time-barred lawsuit.

9. Plaintiff and his attorneys have made no reasonable, good-faith argument for the extension, modification, or reversal of existing law. Further, it is highly unlikely that this or any Court would entertain an argument for an extension, modification, or reversal of the well-established statutes of limitations.

10. Plaintiff and his attorneys engaged in bad faith and/or harassing behavior by ignoring law and facts that were known to them—facts which showed the lawsuit was time-barred—and proceeding to file suit nonetheless.

11. Plaintiff and his attorneys' groundless, frivolous, and bad-faith/harassing assertion of this time-barred lawsuit against Defendant abused the judicial and legal process. This conduct, along with Plaintiff's attorneys' and firm's wider campaign of filing similar baseless suits against Defendant and other car dealerships across Texas significantly impedes this Court's ability to conduct its core functions because it congests the Court's docket with motions and other pleadings relating to the statute of limitations issue and otherwise increases the costs of litigation.

12. Sanctions will be necessary to necessary to [sic] deter, alleviate, and counteract Plaintiff's attorneys' bad faith abuse of the judicial process.

13. There is a direct relationship between the sanction and the offensive conduct described above. The sanctions of reasonable costs, attorney's fees, and other expenses incurred in responding to the filing of the time-barred Original Petition directly address the harm and inconvenience caused by the frivolous, groundless and bad faith and/or harassing nature of the implicit assertion in such petition that the claims were timely filed in accordance with governing statutes of limitations.

14. The sanctions imposed are no more severe than necessary to promote full compliance with the rules. The evidence shows that the sanctions awarded will reasonably offset the costs, attorney's fees, and expenses incurred by Defendant as a direct result from having to respond to Plaintiff's attorneys' frivolous, groundless pleading.

15. For these reasons, there is good cause to support the imposition of sanctions.

Typically, a cause of action accrues when a wrongful act causes some legal injury. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). In some types of cases, the discovery rule may defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). In order for the discovery rule to apply, the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable. *Id.*[5] An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence. *Wagner & Brown*, *Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001). "The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where 'it is difficult for the injured party to learn of the negligent act or omission.'" *Computer Assocs. Int'l*, *Inc. v. Altai*, *Inc.*, 918 S.W.2d 453, 456 (Tex. 1996) (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). The discovery rule is an independent ground of defense. *Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006).

---

[5]Peltier complains that Dike failed to plead that his injury was objectively verifiable—the second element of the discovery rule—and claims that this omission is sufficient to uphold the trial court's finding as to the discovery rule. (The trial court did not make an explicit finding regarding application of the discovery rule; rather, the trial court opined, "Any additional facts adduced hereafter in discovery or otherwise are highly unlikely to establish a basis for filing this time-barred lawsuit.") Peltier specially excepted to Dike's discovery rule pleading, but failed to obtain a hearing on its special exceptions. Dike's pleadings are, therefore, liberally construed in his favor. *See Horizon/HMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). Dike's failure to plead each element of the discovery rule might have constituted the basis for an order compelling him to re-plead, but does not render fatal his reliance on the discovery rule to avoid sanctions.

The Texas Supreme Court has sometimes used the phrase "discovery rule" to refer generally to all instances in which accrual is deferred, including fraud and fraudulent concealment. *Williams v. Khalaf*, 802 S.W.2d 651, 657 (Tex. 1990) (citing case that "involved the 'discovery rule' since there was a claim of fraudulent concealment"); *Moreno v. Sterling Drug*, *Inc*., 787 S.W.2d 348, 351 (Tex. 1990) (citing fraud case as one in which discovery rule applied). The Texas Supreme Court has, however, acknowledged the difference in these theories: "Strictly speaking, the cases in which we have deferred accrual of causes of action for limitations purposes fall into two categories: those involving fraud and fraudulent concealment, and all others. The deferral of accrual in the latter cases is properly referred to as the discovery rule." *S.V.*, 933 S.W.2d at 4.

Even though the discovery rule and the doctrine of fraudulent concealment each delay the accrual of the cause of action, the reasons justifying each are different. *Horwood*, 58 S.W.3d at 736. The doctrine of fraudulent concealment works to estop a defendant from asserting limitations as a defense because "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6; *Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 719 (Tex. App.—Eastland 2002, no pet.). An alleged misrepresentation may be relevant to the equitable principles involved in a fraudulent concealment

11

analysis, but does not affect the determination of inherent undiscoverability in a discovery rule analysis.[6]  *Horwood*, 58 S.W.3d at 736.

Where the discovery rule applies, a cause of action does not accrue—meaning limitations does not begin to run—until discovery.  "Accrual of a cause of action is deferred in two types of cases:  (1) those involving fraud or fraudulent concealment and (2) those where the injury is 'inherently undiscoverable' and is 'objectively verifiable.'"  *In re Estate of Fawcett*, 55 S.W.3d 214, 218–19 (Tex. App.—Eastland 2001, pet. denied).  Moreover, in the discovery rule context, a categorical approach is utilized to determine its applicability.  *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001).  Using this approach, a court does not determine when a particular injury was actually discovered in a particular case, but rather whether the case is the type to which the discovery rule applies.  *Id.*  The focus is on whether a type of injury, rather than a particular injury was discoverable.  *Horwood*, 58 S.W.3d at 736; *Tolin*, 41 S.W.3d at 122; *Via Net v. TIG Ins. Co*., 211 S.W.3d 310, 314 (Tex. 2006).  For example, the discovery rule applies to cases involving fraud or fraudulent concealment.  *See Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997); *Salinas*, 31 S.W.3d at 336.  Dike alleged the "inherent undiscoverability" of his injury as

---

[6]In spite of this distinction, these concepts continue to be utilized more or less interchangeably.  *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997); *Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333, 336 (Tex. App.—San Antonio 2000, no pet.) (discovery rule applies to cases involving fraud and fraudulent concealment).

well as fraud and fraudulent concealment.[7] Thus, the concept of delayed accrual of Dike's cause of action—under both theories—was alleged.[8]

Peltier contends that Dike's claims were subject to two- and four-year limitations periods that commenced with the September 2005 transaction. In his response to the motion for sanctions, Dike filed an affidavit stating that he became aware of his claims against Peltier in March 2009, when he sought the advice of his attorney.[9] The petition was filed in January 2010. Peltier alleges that this evidence, on its face, establishes not only that (1) Dike's claims were

---

[7]Peltier relies on caselaw decided in a summary judgment context to assert that Dike had the burden of proving the elements of fraudulent concealment to avoid the statute of limitations. We reject this argument in the context of a motion for sanctions. Peltier further maintains that given a "chorus of legal authority" that a car dealership is not required to disclose profits it makes in the sale of a vehicle, there can be no doubt that Dike's lawsuit was sanctionable. Because this allegation, which speaks to the merits of Dike's claim, did not comprise any portion of the trial court's findings with respect to the imposition of sanctions, we do not address it.

[8]In *Archer v. Nissan Motor Acceptance Corp*., 550 F.3d 506, 507–08 (5th Cir. 2008), the plaintiffs brought various claims alleging the dealer made misrepresentations concerning their purchase of an automobile. Applying Mississippi law to determine whether the injury was "latent" so that limitations did not run, the court ruled as a matter of law that the car dealer's alleged misrepresentations were discoverable because plaintiffs had the ability to research the deal they were receiving on their own. Peltier relies on *Archer* to assert Dike failed to exercise due diligence in discovering the alleged fraud. Because *Archer* applies Mississippi law rather than Texas law, we do not find this case to be controlling.

[9]Peltier directs us to the case of *Harper v. Mac Haik Ford, Ltd*., No. 01-09-01144-CV, 2010 WL 2650543, at *4–5 (Tex. App.—Houston [1st Dist.] July 1, 2010, no pet.) (mem. op.), in support of its assertion that Dike's affidavit does not present evidence that his injury was inherently undiscoverable. In that case, also brought by the Weinstein law firm, the person signing the affidavit stated, "I was not aware of my claims against [the car dealership] until such time as I sought legal advice from my attorney." *Id*. at 4. In that case, Harper alleged application of the discovery rule in response to a motion for summary judgment filed by the car dealership. The court held that Harper did not raise a fact issue about the discovery rule so as to toll limitations beyond the date of the purchase, with a statement that she learned of her claim when she consulted her attorney on an unidentified date. *Id*. at *5. Aside from the obvious difference in Dike's affidavit—which alleged a date on which he consulted his attorney—*Harper* involved a summary judgment proceeding wherein Harper bore the burden of raising a fact issue regarding application of the discovery rule. Because this case involves a sanctions motion, in which Peltier bore the burden of proving Dike's claim was groundless, *Harper* is not applicable here.

13

time-barred, but also (2) as a matter of law, the discovery rule does not apply because Dike discovered his claims some six months prior to the running of the four-year limitations period for fraud claims.[10] Peltier, therefore, maintains that Dike's claims were groundless because they were clearly barred by the statute of limitations, and Dike's response to the motion for sanctions did not present argument for a reasonable extension, modification, or reversal of existing law.

We have not been provided caselaw supporting the proposition that if a claim is discovered inside the statute of limitations, it cannot, as a matter of law, be one that is "inherently undiscoverable."[11] We find no such cases. If Dike's cause of action did not accrue until it was discovered (here, after he had visited with his attorney), the discovery within the usual period of limitations did not shorten the limitations period.[12] Moreover, Peltier did not by its sanctions motion address the discovery rule. During the hearing, Peltier's attorney argued that:

---

[10]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (Vernon 2002).

[11]Peltier relies on *Fightertown, Inc. v. K-C Aviation, Inc.*, No. 05-96-01998-CV, 1999 WL 701491, at *4 (Tex. App.—Dallas Sept. 10, 1999, pet. denied) (not designated for publication), in support of the proposition that discovery of injury within the statute of limitations showed that the injury at issue was not the type to which the discovery rule applies. *Fightertown*, however, concerned a very different factual scenario, involving a dispute concerning the adequacy of a paint job on an airplane. The discovery at issue occurred when the plaintiff observed signs of corrosion emerging from underneath the plane. The Dallas Court of Appeals correctly observed that the proper inquiry in a discovery rule case is whether the general nature of the wrongful act complained of is inherently undiscoverable. *Id.* at *3. An improper paint job was not inherently undiscoverable within the prescribed limitations period so as to justify application of the discovery rule. In *Fightertown*, the plaintiff discovered facts suggesting its cause of action within about a year of having the plane painted. *Id.* at *1. The court, therefore, concluded that this fast and simple discovery of damage, visible to the naked eye, suggested the claims were not inherently undiscoverable. *Id.* at *4. *Fightertown* does not stand for the broad proposition that discovery of an injury within the limitations period bars application of the discovery rule as a matter of law.

[12]If one were to assume that discovery of an injury during the limitations period placed the burden on the injured party to file suit within the usual limitations period and assuming a four-year period of limitations, a person who discovered

They then try to contend, well, but there's fraud, yet, they present no evidence of fraud with regard to this transaction to try to contend we didn't know or couldn't know.

And so we get an additional four years from the time he went to see a lawyer to file this lawsuit. But that's not how it works. When you know of the claims within the statute of limitations, you're supposed to file within the statute of limitations. Well established law.

We cannot agree this is well-established law in the discovery rule context. This issue notwithstanding, there is a fair amount of caselaw on the issue of whether a time-barred pleading is sanctionable. The sanctions order states that because the petition alleged time-barred causes of action, it was signed in violation of Rule 13 and Chapter 10. This issue has been addressed in certain contexts which are readily distinguished from the case at bar.

For example, Peltier relies on *Booth v. Malkan* for the proposition that:

[W]here . . . the defenses to the lawsuit are so clearly established and are defenses that one would reasonably anticipate to be asserted in such a case, the evidence still may support the trial court's conclusion that the lawsuit is groundless and brought in bad faith or groundless and brought for the purpose of harassment.

858 S.W.2d 641, 643–44 (Tex. App.—Fort Worth 1993, writ denied). In that case, Booth withdrew from a partnership for the purpose of establishing another business. To that end, Booth executed a withdrawal of partner and general release, which absolved him of all liability with regard to the partnership. Ten years later, when the partnership was sold, Booth filed suit seeking over $100,000.00 for his services to the partnership. Booth testified that no new facts had come to

an injury on the third year and 364th day after the injury occurred would be forced to file a lawsuit within one day or be thereafter barred.

15

his attention concerning the matter other than the sale of the partnership assets. Booth further testified that he signed the release for economic reasons and denied that he was forced to sign it, as alleged in his petition. *Id.* at 643. Under these facts, the lawsuit was held to be groundless. *Id.* *Booth* is distinguished from this case inasmuch as suit was brought ten years after the release was signed, no allegation of fraud or the discoverability of Booth's claim was made, and Booth admitted making false statements in his petition.

*Dolenz* affirmed the trial court's finding that plaintiff's time-barred claims were groundless and brought in bad faith. 197 S.W.3d at 421–22. In that case, the trial court granted Boundy's motion for summary judgment on limitations grounds. Thereafter, Boundy sought sanctions under Section 10.001 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure, arguing Dolenz's suit was groundless and filed in bad faith for the purpose of harassment. The trial court found that Dolenz had a law degree and was aware of the applicable statute of limitations. The tolling provisions Dolenz asserted did not, on their face, apply to his case.[13] Hence, the trial court did not abuse its discretion in upholding the trial court's sanctions order. *Dolenz* is distinguished from the case at bar because it involved claims the trial court previously ruled on in Bundy's motion for summary judgment. Those claims, having been

---

[13]Dolenz argued his claims were tolled because he was in prison. At the time of his claim, imprisonment was deleted from the definition of legal disability. Next, Dolenz argued his claims were tolled because of physical disabilities. The court determined that legal disability did not include physical impairment. Finally, Dolenz argued his claims were tolled due to his absence from the state. The court held this tolling provision only applied to defendants, rather than plaintiffs. *Dolenz*, 197 S.W.3d at 420–21. Each of these matters was decided by the court as a matter of law in ruling on Bundy's motion for summary judgment.

determined as a matter of law on summary judgment to have been time barred, coupled with facially inapplicable arguments for tolling the statute, are factors not present in this case.[14]

Moreover, Dike has alleged at least an arguable basis for the delayed accrual of the statute of limitations, based on assertions of fraud, fraudulent concealment, and the claim that Peltier's conduct was inherently undiscoverable. While the record is not sufficiently developed to permit an analysis of the facts supporting those allegations, these types of allegations are recognized legal concepts, that if proven, either toll the statute of limitations or delay the accrual of the cause of action, as previously discussed. This Court takes no position on whether Dike's claims against

---

[14]Other cases cited by Peltier in support of the proposition that a petition which asserts time-barred claims is groundless include *Stromberger v. Turley*, No. 05-04-00050-CV, 2005 WL 701034 (Tex. App.—Dallas Mar. 28, 2005, no pet.) (mem. op.) (trial court granted summary judgment finding Stromberger's Deceptive Trade Practices Act (DTPA) claims barred by limitations and imposed sanctions for filing time-barred claim; evidence showed Stromberger lied about his claimed communications with attorney in support of tolling argument); *Walston v. Lockharat*, No. 10-03-00183-CV, 2005 WL 428433 (Tex. App.—Waco Feb. 23, 2005, pet. denied) (mem. op.) (after 1994 divorce, plaintiff appealed property division; thereafter plaintiff brought numerous suits variously alleging fraud by receiver in sale of property; plaintiff alleged discovery rule applied to toll statute of limitations because fraud not discovered until 1999, when she attempted to collaterally attack judgment in trespass to try title suit, which failed; a bill of review filed in 2003, again alleging order of sale was void; under these facts, trial court did not abuse discretion in dismissing case with prejudice); *Bohls v. Oakes*, 75 S.W.3d 473 (Tex. App.—San Antonio 2002, pet. denied) (award of attorney's fees to party joined in DTPA claim and nonsuited before trial upheld where virtually no evidence company was involved save for a few invoices on their letterhead and limitations had run when party was joined); *Almanza v. Transcont'l Ins. Co.*, No. 05-97-01612-CV, 1999 WL 1012959 (Tex. App.—Dallas Nov. 8, 1999, pet. denied) (not designated for publication) (lawsuit against Transcontinental dismissed with prejudice as sanction for violating Rule 13 of the Texas Rules of Civil Procedure; party reasserted claims previously disposed of by summary judgment; the claims were barred by res judicata, collateral estoppel, and/or statute of limitations); *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67 (Tex. App.—El Paso 1994, writ denied) (directed verdict granted in wrongful death lawsuit affirmed on appeal, as there was no evidence that act or omission of defendant caused death; second suit thereafter filed for survival cause of action, although not brought by estate; trial court granted summary judgment based on judicial estoppel and statute of limitations and imposed sanctions; under these facts, imposition of sanctions affirmed). Each of these cases is easily distinguished from the case at bar: in some, summary judgment was granted on limitations; in others, there was proof of outright deception; and in others, the facts clearly show abuse of the judicial system.

17

Peltier are barred by limitations; we hold only that Peltier failed to carry its burden to establish Dike's claim was groundless.[15]

> ### (2) Peltier Failed to Establish that Dike's Lawsuit Was Brought in Bad Faith or for Purposes of Harassment

Because Peltier failed to establish bad faith or harassment as a motive for filing the petition, Rule 13 sanctions would not be warranted even if Dike's petition was groundless. *See* TEX. R. CIV. P. 13. The burden is on the party moving for sanctions to overcome the presumption that the pleading was filed in good faith. *Tanner*, 856 S.W.2d at 731. A groundless pleading is not sanctionable unless it is also brought in bad faith or for the purpose of harassment. *Id*. Bad faith does not exist when a party exercises bad judgment or negligence. Rather, bad faith means "the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Campos*, 879 S.W.2d at 71; *Mattly v. Spiegel, Inc*., 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must measure a litigant's conduct at the time the relevant pleading was signed. *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App.—Texarkana 2000, no pet.). Rule 13 generally requires that the trial court hold an evidentiary hearing to make a determination

---

[15]Peltier argues that Dike failed to introduce evidence sufficient to support his claims concerning discovery, or to establish the merit of the underlying claim. This argument misapprehends the parties' relative burdens. Peltier is correct that a party relying on the discovery rule at trial must prove all elements of the discovery to avoid the statute of limitations bar. Because this case concerns the imposition of sanctions, Peltier, as movant, bore the burden to prove entitlement to sanctions. *See* TEX. R. CIV. P. 13.

about the motives and credibility of the person signing the petition. *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694 (Tex. App.—Waco 2008, pet. denied); *see, e.g.*, *Low*, 221 S.W.3d at 613, 617 (referring to trial court's evidentiary hearing on motion for Chapter 10 sanctions).

The only evidence introduced at the sanctions hearing was two exhibits offered by Peltier. Exhibit one consists of a series of eleven petitions and corresponding nonsuits filed against Peltier Chevrolet, Inc., and related entities, by the Weinstein law firm.[16] Exhibit two consists of a series of eight petitions and corresponding nonsuits filed by the Weinstein law firm against Peltier Enterprises, Inc., d/b/a Peltier Nissan, an entity related to Peltier Chevrolet, Inc.[17] These exhibits were admitted for the purpose of showing bad faith in the filing of Dike's lawsuit. In referring to these exhibits at the sanctions hearing, counsel for Peltier stated:

> [A]nd why we know these lawsuits are frivolous is we have brought a number of non-suits which have been filed in the very recent past by this law firm against Peltier Chevrolet with basically the same type allegation . . . .

Because the trial court took judicial notice of "the pattern and practice of the Attorneys in similar cases,"[18] Peltier maintains that the filings and nonsuits included in these exhibits are

---

[16]Only one of the petitions was filed in the Smith County Court at Law Number Three, where the Dike case was filed. The remaining petitions were filed in the two remaining Smith County Courts at Law, the District Courts of Smith County, and in Henderson County. The trial court took judicial notice of each of these filings, without objection. Any error in having done so was remedied when the filings were admitted into evidence without objection.

[17]These filings were in the Smith County District Courts, Smith County Court at Law Number Two, and in Henderson County. This exhibit was admitted into evidence without objection.

[18]The trial court commented that:

> What I'm seeing here is, and I think from all those other cases right there, is motion for summary judgment and then the case gets non-suited. There's not a response filed. And I think I've had one

19

circumstantial evidence that Dike's petition was filed in bad faith. The record fails to reflect that the trial court took judicial notice of anything other than the filings contained in exhibit one. The issue presented, therefore, is whether the petitions and nonsuits filed by the Weinstein law firm on behalf of other clients against Peltier and a related entity are, standing alone and in and of themselves, evidence of bad faith in the filing of the petition in the Dike case. Certainly, the fact that other, similar lawsuits were filed and subsequently nonsuited gives cause for concern that those lawsuits lacked merit and were filed for the purpose of harassment. If at least some of the other suits had been shown to be without merit or brought for the purpose of harassment, then the logical inference could then be that the lawsuit filed on behalf of Dike were of a like kind. Because the record shows the filing of the previous lawsuits and their subsequent dismissals through nonsuits, but is totally devoid of evidence relating to impermissible circumstances concerning these actions, the trial court could not infer they were brought in bad faith. Any subsequent inference that the Dike petition was brought in bad faith is without evidentiary support.

Rule 162 of the Texas Rules of Civil Procedure provides that a plaintiff may dismiss its case at any time before it has introduced all of its evidence. TEX. R. CIV. P. 162. A "plaintiff's right to take a nonsuit is *unqualified and absolute* as long as the defendant has not made a claim for

---

or more of those here like that.

The record does contain evidence of a pattern of filing petitions, with a nonsuit after summary judgment. The record merely reflects various petitions and corresponding nonsuits. Even the lone petition and nonsuit filed in the Smith County Court at Law Number Three contained in exhibit one does not include evidence of a motion for summary judgment having been filed in that case.

affirmative relief." *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 840 (Tex. 1990). Plaintiffs decide to nonsuit for a variety of reasons, many having nothing to do with the merits of the litigation. Here, there is no evidence relating to the circumstances or timing of the other petitions followed by nonsuits. Peltier did not question Dike's attorneys about the circumstances surrounding the other cases, and did not call any party involved in the other cases to explain the reasons for the nonsuits. It may well be that if the record had been more fully developed in this regard, ample evidence of bad faith may well have been established. We cannot infer from this scant evidence a pattern and practice of filing petitions and nonsuiting same after the filing of a motion for summary judgment. In short, there is no evidence in the record tying the filings in exhibits one and two to the merits of the sanctions order in this case.[19] As a result, we do not find the evidence offered at the sanctions hearing to be relevant to the issue of bad faith in filing the petition by Dike against Peltier.

Moreover, in the absence of evidence of Dike's motive in nonsuiting his petition, the simple fact he filed a nonsuit after Peltier filed a motion for summary judgment is not evidence of bad faith or harassment. Because neither Dike nor his counsel were called to testify regarding the

---

[19]One of the findings of the trial court in support of good cause for imposing sanctions is the "Plaintiff's attorneys' and firm's wider campaign of filing similar baseless suits against Defendant and other car dealerships across Texas." We find no support for this finding in the record. The fact that the Weinstein law firm has filed and nonsuited similar claims against Peltier Chevrolet, Inc., and Peltier Nissan is no evidence that those lawsuits were baseless. There is no independent evidence in the record to support the finding that any of these lawsuits were baseless. Further, the petitions and nonsuits contained in exhibits one and two were filed only in Smith and Henderson Counties. There is no evidence in the record of similar lawsuits filed against other car dealerships across Texas. We disregard this finding in its entirety. "In reviewing sanctions orders, the appellate courts are not bound by a trial court's findings of fact and conclusions of law; rather, appellate courts must independently review the entire record to determine whether the trial court abused its discretion." *Am. Flood Res., Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam).

21

reasons for taking a nonsuit, there is no evidence in the record regarding the motive in filing the nonsuit. Dike could have nonsuited his claims for a variety of reasons. The Houston Fourteenth Court of Appeals recognized this reality in *Mattly*, 19 S.W.3d at 896–97, where the plaintiff nonsuited her claims after the defendant sought summary judgment. In that case, Mattly testified at the sanctions hearing that she could no longer afford to continue her lawsuit. Because the record contained no evidence to show that Mattly acted in bad faith by filing a nonsuit, the court was unwilling to find that the filing of a nonsuit is, in and of itself, evidence of bad faith. *Id.* Likewise, there is no evidence in this case that Dike acted in bad faith by filing a nonsuit. The fact that Dike filed a nonsuit is not, standing alone, evidence of bad faith.[20] *See id.* at 897.

Peltier further maintains bad faith is evidenced here because Dike's attorneys failed to make reasonable inquiry regarding the statute of limitations before filing suit. Here, limitations is a particularly important issue since the sanctions order finds that filing the petition outside of the statute of limitations amounts to sanctionable conduct. We have previously discussed the cases Peltier relies on to support its claim that the filing of a case outside of the statute of limitations is sufficient to support sanctions. The conduct in each of those cases, when taken together with the

---

[20]Peltier contends that it was permissible for the trial court to draw inferences from the filing of the nonsuit, together with the additional nonsuits filed by Dike's attorneys. Because we determine the nonsuits filed in other cases are not relevant to the issue of bad faith, we do not believe an inference of bad faith can be made solely from the filing of the nonsuit in this case.

time-barred claim, was sufficient to support sanctions.[21]   Here, there is no evidence of questionable conduct.[22]

Rule 13 requires sanctions based on the acts or omissions of the represented party or counsel, and not merely on the legal merit of the pleading.  *Parker v. Walton*, 233 S.W.3d 535, 539 (Tex. App.—Houston [14th Dist.] 2007, no pet.).   This is true because improper motive is an essential element of bad faith.   *Elkins*, 103 S.W.3d at 669; *Alejandro v. Bell*, 84 S.W.3d 383, 393 (Tex. App.—Corpus Christi 2002, no writ) (no evidence presented at sanctions hearing from which the trial court could determine lawsuit filed in bad faith).   Here, the petition was not merely filed outside of the limitations period; there was a dispute regarding the application of the discovery rule.   Because Peltier had the burden of proving bad faith, it was incumbent that Peltier provide some proof of improper motive at the sanctions hearing.   *See Randolph v. Jackson Walker*, *L.L.P.*, 29 S.W.3d 271, 277 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("Because appellees had the burden to establish that sanctions were justified, it was 'imperative for the trial court to convene and conduct an evidentiary hearing.'").   Peltier claims this proof is evident in the fact that Dike could not have made reasonable inquiry into the applicability of the statute of limitations, or he would not have filed the suit.   Conversely, Peltier contends that if Dike filed the petition after having made reasonable inquiry into the statute of limitations, this is

---

[21]See FN 14 and related text, *supra*.

[22]Peltier claims the other filings and nonsuits introduced at the hearing, together with the nonsuit in this case, support an inference of bad faith.   For the reasons previously stated, we do not find these circumstances to be evidence of bad faith or harassment.

evidence of bad faith. We reject this circuitous argument. If counsel conducted legal research that led to the conclusion that either the discovery rule or the doctrine of fraudulent concealment salvaged Dike's claims, does that amount to bad faith? We do not believe that it does. If counsel was incorrect in that conclusion, this may amount to poor judgment, but poor judgment does not equate to bad faith. *Campos*, 879 S.W.2d at 71.

While we recognize circumstantial evidence will suffice to allow a trial court to infer bad faith and improper motive, we do not believe that circumstantial evidence is present in this case. The record does not reflect what inquiry was made regarding the statute of limitations and the application of the discovery rule. As the party having the burden of proof at the sanctions hearing, Peltier could have easily called counsel to testify regarding what inquiry, if any, was made with respect to the application of the discovery rule before filing the petition. It may well be that no such inquiry was made, but we cannot draw that inference from a silent record. We find that Peltier failed to establish bad faith or harassment in the filing of Dike's petition.

**B. The Trial Court Erred in Assessing Sanctions Under Chapter 10 of the Texas Civil Practice and Remedies Code**

Peltier maintains that even if sanctions cannot be imposed under Rule 13, this Court should affirm the imposition of sanctions under Chapter 10. Chapter 10 provides that:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001.[23]   The trial court found that the petition was signed for an improper purpose and that its implicit assertion that the lawsuit was timely filed under the applicable statutes of limitations was frivolous because it was not warranted by existing law, had no basis in fact, or was unlikely to have any basis in fact.[24]

Although Rule 13 requires a party to have filed a groundless pleading brought in bad faith or a groundless pleading for harassment, sanctions under Chapter 10 can be awarded if the suit was filed for an improper purpose, even if the suit was not frivolous. *Save Our Springs Alliance*, *Inc.*,

---

[23]The court may issue sanctions under Chapter 10 upon motion or upon its own initiative. TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(b). The sanctions may include "an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(c)(3).

[24]While Dike's brief addressed the merits of imposition of sanctions under Rule 13, it does not address the merits of the imposition of sanctions under Chapter 10.

198 S.W.3d at 321. *Compare* TEX. R. CIV. P. 13 *with* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001. We construe the phrase "improper purpose" as the equivalent of "bad faith" under Rule 13. *See* TEX. R. CIV. P. 13; *Save Our Springs Alliance*, *Inc.*, 198 S.W.3d at 321. For the reasons stated earlier in this opinion, there is no evidence of an improper purpose.

Under Section 10.001, the signer of a pleading certifies that each claim and allegation is based on the signatory's best knowledge, information, and belief, formed after reasonable inquiry. *Low*, 221 S.W.3d at 615. Each allegation and factual contention in a pleading must have, or be likely to have, evidentiary support after a reasonable investigation. *Id.* In *Low*, the Texas Supreme Court found sanctions were justified when the petition claimed physicians prescribed the drug Propulsid to White. White's attorney was in possession of White's medical records before he filed the lawsuit; those records did not indicate that the physicians prescribed or administered the drug to White. *Id.* at 616. Further, both physicians filed affidavits swearing that they did not in any way provide Propulsid to White. *Id.* at 617. The evidence, therefore, supported the trial court's conclusion that the allegations against the physicians were without evidentiary support.

In this case, as previously discussed, the only evidence offered at the sanctions hearing was other lawsuits and corresponding nonsuits filed by Dike's attorneys, together with the nonsuit filed by Dike. We have previously determined this evidence, standing alone, does not support a finding that Dike's pleading was filed in bad faith. Thus, in order to find Dike's petition lacked

legal or factual support at the time it was filed, the trial court could only have relied on the petition itself and/or Dike's affidavit.

The petition alleged fraud and the inherent undiscoverability of Dike's claim. Dike's affidavit stated that he became aware of his claims in March 2009. For the reasons previously discussed, this information, standing alone, is not evidence that Dike's claims were not warranted by existing law or that those claims lack a factual basis or were unlikely to lack a factual basis. Unlike *Low*, where evidence was presented that the plaintiff's claims did not have a factual basis, there is no such evidence in this case. That is not to say that such evidence does not exist—but it was not presented to the trial court. Under Chapter 10, Dike's attorneys certified he made a reasonable inquiry into all of the allegations and certified that all the allegations had evidentiary support, or were likely to have evidentiary support. There is no evidence that such reasonable inquiry was *not* made, and the fact that the petition and affidavit show the claims were discovered inside the statute of limitations does not evidence the failure to make reasonable inquiry. We conclude the trial court abused its discretion in concluding Chapter 10 was violated in this instance.

## C.    Sanctions Against Dike and Weinstein

In his remaining two points of error, Dike claims that even if sanctions were properly assessed against Owen (who signed the pleadings in Dike's case) neither he nor Weinstein should

27

have been sanctioned.   Because we find error in the imposition of sanctions under Rule 13 and

Chapter 10 and this is dispositive, it is not necessary for us to address these issues.

## IV.    CONCLUSION

For the reasons stated herein, we reverse the trial court's order imposing sanctions against

Owen, Dike, and Weinstein and render judgment that no sanctions be imposed.


Bailey C. Moseley
Justice


Date Submitted:     March 9, 2011
Date Decided:       April 1, 2011

28