**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00626-CV**
_____

**IN THE INTEREST OF C.M.F., L.M.F. AND C.G.F.**

**On Appeal from the 88th District Court**
**Hardin County, Texas**
**Trial Cause No. 50253**

**MEMORANDUM OPINION**

Kevin Fuller appeals from a judgment for child support. He argues that a mediated settlement agreement (MSA) was immediately effective upon execution and took precedence over prior temporary orders; that the trial court incorrectly calculated the alleged arrearages and credits; and that the trial court should have sanctioned Amy Fuller for filing a motion for contempt.

THE JUDGMENT

Among other things, the temporary orders required Kevin to pay $1,500 a month in child support. The temporary orders stated, "All of the above orders shall remain in effect until a Decree of Divorce is signed in this cause, except as herein above provided, or until further order of the Court."

1

The MSA, executed by Kevin and Amy and their attorneys, provides in part as follows:

> Kevin Fuller will pay $1,250.00 per month payable on or before the tenth of each month. Kevin Fuller will be current on all child support obligations ordered under the temporary orders by the date the decree is entered.

After the execution of the MSA, Kevin began paying $1,250 in monthly child support.

The divorce decree, states in part as follows:

> The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The Court approves the agreement of the parties as contained in this Final Decree of Divorce.
> The agreements in this Final Decree of Divorce were reached in mediation with [the mediator]. This Final Decree of Divorce is stipulated to represent a merger of a mediation agreement between the parties. To the extent there exist any differences between the mediation agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.
>     . . . .
> It is ordered that Kevin Mattox Fuller is obligated to pay and shall pay to Amy Lynn Fuller child support of $1,250.00 per month, with the first payment being due and payable on or before May 10, 2011, and that Kevin Mattox Fuller shall be current on all child support obligations ordered under the temporary orders by the date this decree is entered. Thereafter, a like payment of $1,250 will be due and payable on the 10th day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below[.]

Two weeks prior to the trial judge's signing of the divorce decree, Amy filed a motion for enforcement and contempt and sought to compel Kevin to pay alleged child support arrearages and to comply with the temporary orders until entry of the divorce

2

decree. An evidentiary hearing was held. The trial court found that the temporary orders continued in effect until the entry of the Final Decree of Divorce and granted "a cumulative judgment for child support arrearages against [Kevin] of . . . $4,085[.]"

MEDIATED SETTLEMENT AGREEMENT

In issue one, Kevin argues that, as a matter of law, the mediated settlement agreement was immediately binding, effective, and enforceable upon execution. Amy argues that the MSA did not supersede the temporary orders, and that the provisions of the MSA were not effective until entry of the divorce decree.

Sections 6.602 and 153.0071 of the Texas Family Code govern mediated settlement agreements. *See* Tex. Fam. Code Ann. § 6.602 (West 2006), § 153.0071 (West 2008). Section 6.602 applies to property division; section 153.0071 applies to suits affecting the parent-child relationship. *See id.* §§ 6.602(b), 153.0071(d); *Barina v. Barina*, No. 03-08-00341-CV, 2008 WL 4951224, at *4, n.2 (Tex. App.—Austin Nov. 21, 2008, no pet.). Section 153.0071 provides in part as follows:

> (c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

> (d) A mediated settlement agreement is binding on the parties if the agreement:

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
> (2) is signed by each party to the agreement; and

3

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(e) If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

(e-1) Notwithstanding Subsections (d) and (e), a court may decline to enter a judgment on a mediated settlement agreement if the court finds that:

(1) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and
(2) the agreement is not in the child's best interest.

Tex. Fam. Code Ann. 153.0071(c)-(e-1). The mediated settlement agreement in this case complies with the requirements of subsection (d).

Kevin argues the issues revolve around the statutory construction of section 153.0071. The determinative issue in this case, however, is not whether the statute makes the mediated settlement agreement immediately effective, but rather what this particular agreement provides. Contract principles apply. *Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The mediated settlement agreement is subject to interpretation and construction. *See Milner v. Milner*, 361 S.W.3d 615, 618-19 (Tex. 2012). A court ascertains the parties' intentions as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 333 (Tex. 2011). We examine and consider all provisions of the contract. *Id.*; *Coker v. Coker*,

4

650 S.W.2d 391, 393 (Tex. 1983). When the agreement can be given a certain and definite meaning, the construction is a matter for the court. *Milner*, 361 S.W.3d at 619.

The language of the mediated settlement agreement can be given a certain and definite meaning. The court could reasonably construe the agreement to provide that Kevin will be current on all child support obligations "ordered under the temporary orders [$1,500 per month] by the date the decree is entered[,]" and then at that time, he will pay $1,250 per month in child support. Another provision in the MSA supports this construction; the reference date in that provision is also to the date of entry of the divorce decree. The mediated settlement agreement assumes the continued effect of the temporary orders until the divorce decree is signed. Otherwise, the parties would have no reason to include the second sentence: "Kevin Fuller will be current on all child support obligations ordered under the temporary orders by the date the decree is entered." The trial court did not need to consider any extraneous evidence to ascertain the meaning of the agreement. The trial court could reasonably conclude that the parties agreed the reduced child support would take effect on the date of the entry of the divorce decree. We overrule issue one.

CREDITS/OFFSETS

Kevin argues the trial court erred in its calculation and allowance of credits owed to him. His argument presupposes a different effective date of this particular MSA, an argument we have rejected.

The temporary orders provide as follows:

4. Medical and Dental: [Husband] is ordered to maintain for the benefit of the other party and minor child/ren the present medical, dental, and hospital insurance, to pay premiums thereon, to maintain them as insureds and to cooperate in the presentation, collection and reimbursement of any claims under the policy.

At the end of this typed section is the following handwritten statement: "Husband will pay 100% of uninsured medical for the children."

Amy testified she paid $1,729.75 for the children's medical expenses that were itemized in her motion for enforcement. She explained that, seeking reimbursement, she presented the invoices or the bills to Kevin. She testified he paid her nothing on those medical expenses. Kevin did not dispute Amy's testimony. Because Kevin was required to pay "100% of [the $1,729.75] uninsured medical for children" under the temporary orders, he was required to reimburse her for those expenses.

The temporary orders also enjoined the parties from "[c]ancelling, altering, or in any manner affecting any casualty, automobile, or health insurance policies insuring the parties' property or persons, including the parties' minor child/ren." The mediated settlement agreement does not contain a provision on automobile insurance or on Amy's medical insurance. Kevin acknowledged he cancelled Amy's car insurance on October 17, 2010. Amy testified she obtained automobile insurance from November 2010 through June 2011 at a cost of $86.60 per month. The judgment was not in error in finding Kevin responsible for paying Amy $690 for the automobile insurance premiums.

6

The temporary orders required Kevin to maintain medical insurance for Amy and to pay the premiums for it. Amy does not claim Kevin failed to pay those premiums. The evidence shows he did that. Since he was required to pay the premiums, he is not entitled to an offset for the amount he paid.

Kevin also argues the trial court erred in denying him credit for payments he made for Amy's portion of the children's dental expenses. The dental expenses fell into two categories: regular dental care and braces for one of the children. Although the temporary orders distinguished between medical and dental insurance, the orders did not set out the division of responsibility for the payment of the children's dental expenses. At the enforcement hearing, there was evidence that Kevin paid at least $1,367 of the children's dental expenses. The Texas Family Code provides that a parent has a duty to support his or her children, including the duty to provide medical and dental care. *See* Tex. Fam. Code Ann. § 151.001(a)(3) (West 2008). Kevin argues he is entitled to credit for having paid Amy's one-half of all the dental expenses, outside the cost of the braces, as well as everything he paid in excess of $4,000 for the braces. Amy concedes she owes Kevin additional money for her share of the braces expense. Although Kevin testified to two additional bills he had paid, the trial court otherwise gave Kevin an offset on his payment of the dental bills in the amount he requested at the end of the hearing. With the exception of the additional credit concerning the braces, we overrule issues two and three.

SANCTIONS

In issue four, Kevin argues the trial court erred because it failed to find, under Rule 13, that Amy brought her contempt motion in bad faith and for the purposes of harassment. *See* Tex. R. Civ. P. 13. Generally courts presume that pleadings are filed in good faith. Tex. R. Civ. P. 13. The burden is on the party moving for sanctions to overcome this presumption. *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 191 (Tex. App.—Texarkana 2011, no pet.). Based on the language of the temporary orders, the mediated settlement agreement, and the parties' testimony, the trial judge found that Amy's motion had merit and that the temporary orders continued in effect until the entry of the divorce decree. The trial court ordered Kevin to pay certain obligations under the temporary orders, but did not find Kevin in contempt. The trial court could reasonably conclude nevertheless that the motion for contempt was not filed in bad faith. We overrule issue four.

MODIFICATION

The parties agree Kevin is entitled to an additional offset of $351 for dental expenses as noted in issue three. We modify the judgment to reflect that Kevin Fuller is entitled to an additional offset in the amount of $351, resulting in net unpaid obligations of $3,734. The judgment is therefore modified to reflect a judgment for child support arrearages in the amount of $3,734. We affirm the judgment as modified.

8

AFFIRMED AS MODIFIED.

_____
DAVID GAULTNEY
Justice

Submitted on August 20, 2012
Opinion Delivered February 7, 2013

Before Gaultney, Kreger, and Horton, JJ.