# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 26, 2008

Charles R. Fulbruge III
Clerk

No. 07-60812

FANNIE ARCHER, et al.

Plaintiffs - Appellants

v.

NISSAN MOTOR ACCEPTANCE CORPORATION, et al.

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

PATRICK E. HIGGINBOTHAM:

This case concerns the running of the limitations period governing suits based on the Equal Credit Opportunity Act.[1] Appellants contend that their suit was not time barred because the ECOA's two-year limitations period did not begin to run until discovery of the alleged violations of the Act. We disagree and hold that the ECOA's limitations period is triggered by "the occurrence of the violation," not discovery of the violation.

Appellants also brought Mississippi state law claims which are governed by the state's general three-year statute of limitations. We find that these claims were also time barred because, while a codified discovery rule does apply

---

[1] 15 U.S.C. § 1691.

under Mississippi law, the claims were discoverable at the time of the violation, which for all Appellants was more than three years before suit was brought.

I

Between 1993 and 1996, Plaintiffs-Appellants, five African American car buyers, received dealer financing from their Nissan dealerships. The dealers, in turn, assigned the loans[2] to Defendant-Appellant Nissan Motor Acceptance Corporation pursuant to an on-going agreement between the dealers and NMAC. Under the agreement, NMAC offered to buy any loans originated by the Nissan dealers that it had pre-approved. To obtain pre-approval the dealers would forward customers' financing applications to NMAC. NMAC would then determine, based only on the objective data in the application, the "buy rate," the rate at which it would offer to buy the loan from the dealer. The dealer, knowing the rate at which it could sell the loan to NMAC, was then free to add a markup to the buy rate to arrive at the retail rate presented to the customer. The dealer markup was subjective, not based on objective criteria such as payment history or debt ratio. Plaintiffs allege that the subjective markup resulted in increased rates to African Americans as compared with similarly situated white customers and that NMAC violated the ECOA by purchasing these loans from the dealers.

In December 2002 and more than six years after their financing transactions, Plaintiffs brought an action alleging that NMAC violated the ECOA through its involvement in discriminatory dealer loans. Plaintiffs also brought claims under Mississippi state law, including fraud, negligence, conspiracy, and violations of the Mississippi Unfair and Deceptive Acts and Practices Act, all of which stemmed not from discrimination, but from the

---

[2] The loans are termed retail installment contracts, which are financing contracts between a dealer and a car buyer wherein the buyer agrees to pay the vehicle price in periodic installments that include interest.

dealers' alleged affirmative misrepresentations that the Plaintiffs were receiving the "best rate."

The district court granted NMAC's motion for summary judgment on both the ECOA and state law claims because the claims were brought well outside their respective limitations periods and no judicially imposed equitable doctrine such as a discovery rule saved the claims, rulings we review de novo.[3]

## II

We hold that a discovery rule does not apply to ECOA claims. The ECOA time prescription provides in sweeping and direct language that "[n]o action shall be brought later than two years from the date of the occurrence of the violation."[4] This is a statute of repose establishing with clear text a "jurisdictional bar" under which "federal courts lack the power to extend the period to allow for late adjudication of claims."[5] Summary judgment was therefore appropriate because these claims expired before they were brought and this clear statute foreclosed equitable doctrines.

We have previously found similar statutory language to constitute a statute of repose. In Radford v. General Dynamics Corp., we held that the ERISA limitations provision, which states "[n]o action may be commenced under this subchapter . . . after the earlier of . . . six years after [] the date of the last [violation]," is a statute of repose, "serving as an absolute barrier to an untimely suit."[6] Both the ECOA and ERISA set clear outside limits, measured from the

---

[3] Topalian v. Ehrman, 954 F.2d 1125, 1131-32 (5th Cir. 1992).

[4] 15 U.S.C. § 1691e(f).

[5] Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998) (deciding whether the Antiterrorism and Effective Death Penalty Act limitations period is a statute of limitations or a jurisdictional bar).

[6] Radford v. Gen. Dynamics Corp., 151 F.3d 396, 400 (5th Cir. 1998) (per curiam) (interpreting 29 U.S.C. § 1113).

date of the violation itself, within which suit must be filed.  The statutes leave federal courts no power to extend the limitations period beyond, in the case of the ECOA, "two years from the date of the occurrence of the violation."

Nor is there any tension between the ECOA's text and its legislative history.  The ECOA was amended in 1976, in part to extend the limitations period from one to two years.  The Senate report accompanying the amendment explained: "The development and investigation of the necessary facts . . . may require more than a year.  Discriminatory practices . . . are not apparent from the face of particular documents or contracts."[7]  Congress thus sought to accommodate aggrieved individuals by enlarging the limitations period in which to discover unapparent violations.  Such an accommodation would have been unnecessary if Congress intended the courts to engraft equitable tolling doctrines onto the statute.

The Supreme Court has endorsed this reading of the ECOA, stating that a discovery rule does not apply to statutes that key the start of the limitations period to "the date of the occurrence of the violation."  In TRW Inc. v. Andrews,[8] the appellant argued that a discovery rule should apply to Fair Credit Reporting Act claims because an early version of the statute, which started the limitations period strictly on the "date of the occurrence of the violation," was revised to start the limitations period on the presumably more flexible "date on which the liability arises."  While the Court did not sanction such an attenuated inference of congressional intent, it nevertheless stated that if the "date of the occurrence of the violation" language had remained in the final provision, it "would have plainly established" that a discovery rule was inapplicable.[9]  That language is

---

[7] S. REP. NO. 94-589, at 14 (1976), as reprinted in 1976 U.S.C.C.A.N. 403, 416.

[8] 534 U.S. 19, 32 (2001).

[9] Id.

present in the ECOA. Plaintiffs' ECOA claims, which were brought "later than two years from the date of the occurrence of the violation," are time barred.

## III

The district court granted NMAC summary judgment on the state law claims finding that they also were time barred. Plaintiffs brought a slew of state law claims against NMAC related to the dealers' alleged affirmative misrepresentations that Plaintiffs were receiving the "best rate." All of the claims are subject to Mississippi's general three-year statute of limitations, which begins to run when the cause of action accrues.[10] Under Mississippi law, "a cause of action for 'deceit accrues upon the completion of the sale induced by such false representation, or upon the consummation of the fraud.'"[11] The parties agree that the causes of action accrued when the financing transactions occurred. All the transactions occurred over six years before suit was brought, are outside the general limitations period, and are barred unless a tolling provision applies.

### A

Plaintiffs contend that Mississippi's residual discovery rule saves their claims. It reads:

> In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.[12]

---

[10] MISS. CODE ANN. § 15-1-49(1) ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.").

[11] Black v. Carey Canada, Inc., 791 F.Supp. 1120, 1123 (S.D. Miss. 1990) (quoting Dunn v. Dent, 153 So. 798, 798 (Miss. 1934)).

[12] MISS. CODE ANN. § 15-1-49(2).

The Mississippi Supreme Court has held that this discovery rule only applies if a latent injury is present.[13] To be latent, an injury must be "undiscoverable by reasonable methods" such as "through personal observation or experience."[14] Applying this guidance, the Mississippi discovery rule does not toll the limitations period in this case because the dealers' allegedly fraudulent misrepresentations that Plaintiffs were getting the "best rate" were not undiscoverable by reasonable methods. It is true that ordinarily this determination is a fact driven inquiry.[15] Here, however, it is clear as a matter of law that Plaintiffs were capable at the time of the transactions of ascertaining whether a competing dealer, a bank, or a wealthy family member could beat the financing rates pitched by the car salesmen. There is nothing latent about the fact that a car dealer may use puffing[16] to maximize profits on a car sale and a reasonable buyer should expect to encounter such tactics in both the sale and financing aspects of the transaction.

Plaintiffs, however, point specifically to the markup arrangement between NMAC and the dealers as itself being undiscoverable since neither NMAC's buy rate nor the markup was disclosed to car buyers. As NMAC argues, though, no applicable federal or state law requires the dealer to disclose the price at which

---

[13] PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 50 (Miss. 2005). Mississippi's residual discovery rule at issue in Lowery and in this case focuses the inquiry only on the plaintiff's discovery of a latent injury, as compared to the state's medical malpractice discovery rule, MISS. CODE ANN. § 15-1-36, which inquires more comprehensively as to when the "patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner." Huss v. Gayden, 991 So.2d 162, 165 (Miss. 2008) (quoting Smith v. Sanders, 485 So.2d 1051, 1052 (Miss. 1986) (emphasis omitted)).

[14] Lowery, 909 So.2d at 51.

[15] Huss, 991 So.2d at 166 ("Application of the discovery rule is a fact-intensive process.") (citation omitted).

[16] See Thomas v. Miss. Valley Gas Co., 113 So.2d 535, 538 (Miss. 1959) (holding that puffing does not give rise to fraud liability under Mississippi law).

a financier has agreed to buy the loan and Plaintiffs were presented the legally required total annual percentage rate.[17]  It is this total annual percentage rate that Plaintiffs could have compared with other readily-available finance providers to discover if they were indeed getting the "best rate."

The state discovery rule aside, by their own sworn testimony, Plaintiffs were suspicious at the time of their transactions that the rates offered by the dealers were not the lowest financing rates available.  It was at this point, well over three years before their suit was brought, that Plaintiffs "should have discovered by the exercise of reasonable diligence, that [they] probably ha[d] an actionable injury."[18]  Plaintiffs' statements such as "I knew [the bank] had a lower rate," and "I didn't really believe them, but you know, I went on and accepted [the rate]" belie attempts to extend the statute of limitations on the ground that their putative action was undiscoverable.

B

Mississippi has also codified the doctrine of fraudulent concealment, which Plaintiffs would employ to toll the statute of limitations.  The statute reads:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.[19]

---

[17] See Truth in Lending Act, 15 U.S.C. § 1606; Reg. Z, 12 C.F.R. § 226.18.  In fact, the Federal Reserve Board expressly rejected a regulation requiring the disclosure of dealer participation as a separate component of the finance charge.  42 Fed. Reg. 19,124 (Apr. 12, 1977).

[18] Lowery, 909 So.2d at 51(discussing recent Mississippi Supreme Court decisions that "further erode the level of knowledge required to vest a cause of action" and trigger the limitations period).

[19] MISS. CODE ANN. § 15-1-67.

We have previously interpreted the statute, holding "Mississippi law is unambiguous: Plaintiffs must prove a subsequent affirmative act of fraudulent concealment to toll the limitations."[20] Plaintiffs in this case simply fail to allege a subsequent act of concealment separate from the alleged fraud underlying the cause of action. The only acts of NMAC alleged by Plaintiffs relate to the transactions themselves. Plaintiffs do not point to any acts subsequent to the transactions and thus fail to satisfy the elements of fraudulent concealment.

Accordingly, all of Plaintiffs' claims are time barred. AFFIRMED.

---

[20] Ross v. Citifinancial, Inc., 344 F.3d 458, 463-64 (5th Cir. 2003).