81 So.3d 1112 (2012)
TRUSTMARK NATIONAL BANK, Frank Hart and Alvis Hunt
v.
C. Brent MEADOR, M.D.
Mississippi Baptist Health Systems, Inc., C. Gerald Cotton, Lu Harding, Charles Harrison, Eric A. McVey, III, M.D., Kurt Metzner, James P. Wigley, Trustmark National Bank, Frank Hart and Alvis Hunt
v.
C. Brent Meador, M.D.
Nos. 2009-IA-01939-SCT, 2009-IA-01940-SCT.
Supreme Court of Mississippi.
March 8, 2012.
*1114 Brian C. Smith, William F. Ray, Jackson, attorneys for appellants.
Michael S. Allred, attorney for appellee.
D. Collier Graham, Jackson, Rex Morris Shannon, III, Jeremy Luke Birdsall, attorneys for appellants.
Before DICKINSON, P.J., CHANDLER and KING, JJ.
CHANDLER, Justice, for the Court:
¶ 1. On August 31, 2004, Dr. Carroll B. Meador filed his Complaint against Mississippi Baptist Health Systems, Inc. (MBHS), Trustmark National Bank (Trustmark), and Doe Defendants 1 through 10, for breach of fiduciary duties, interference with fiduciary duties, interference with contract rights, interference with prospective business advantage, intentional infliction of emotional distress, deceit, fraud, and retaliatory discharge. On December 30, 2004, Meador filed an Amended Complaint, adding as defendants Central Medical Management, Inc.; Jackson Medical Clinic, Inc.; Jackson Medical Clinic, P.A.; Jackson Medical Clinic, LLC; Premier Medical Management of Mississippi, Inc.; James C. Bethea; William A. Causey, M.D.; C. Gerald Cotton; Lu H. Harding; Charles Harrison; Frank Hart; Alvis Hunt; Eric A. McVey, III, M.D.; Kurt W. Metzner; M. Kent Strum; James F. Wigley; and Doe Defendants 1 through 40; and adding as causes of action conspiracy, gross negligence, state-law antitrust claims, tort arising out of contract, and breach of covenants of good faith and fair dealing.
¶ 2. On February 3, 2005, Defendants Alvis Hunt and Frank Hart filed a notice of removal to the United States District Court for the Southern District of Mississippi. In an order filed March 9, 2007, the district court granted remand of the case, finding the federal bankruptcy proceedings in the case had been concluded and only state claims remained. On January 3, 2008, Trustmark, Hunt, and Hart filed a motion for summary judgment and motion to dismiss. MBHS filed a motion for summary judgment on February 15, 2008. On August 20, 2008, Meador filed a memorandum in opposition to summary judgment, along with an affidavit of Meador. On December 19, 2008, MBHS filed a motion to strike portions of Meador's affidavit. In a hearing on February 19, 2009, the trial court judge denied the motion to strike. Arguments on the summary judgment motions also were presented at the February 19, 2009, hearing, and on July 2, 2009, the court issued an order denying defendants' motions for summary judgment and motions to dismiss. On February 11, 2010, this Court issued an order staying the proceedings and granting defendants' petition for interlocutory appeal on the trial court's denial of summary judgment and motion to strike.
¶ 3. We find that the trial court abused its discretion in refusing to strike portions *1115 of Meador's affidavit. We also find the trial court erred in denying Trustmark and MBHS' motions for summary judgment. Therefore, we reverse the denial of the motion to strike the portions of the affidavit and reverse the trial court's denial of summary judgment in favor of Trustmark and MBHS. We find the other issues presented to be without merit.

FACTS
¶ 4. Meador's relationship with MBHS began in the 1990s when he was employed as the Medical Director of the Chemical Dependency Center of Mississippi Baptist Medical Center, Inc. (MBMC), an affiliate of MBHS. In that capacity, in 1996, Meador founded Byram Family Medical Clinic, P.A., in Byram, Mississippi, and Mobile Physicians' Services, Inc. A dispute arose between Meador and MBHS, which led to settlement negotiations between the parties. During those settlement negotiations, Meador sent MBHS a letter on February 17, 1999, with a proposed complaint, which listed as defendants MBHS; MBMC; Farris Consultants, Inc.; Brent Farris, and C. Gerald Cotton. The proposed complaint alleged fraud in the inducement, promissory estoppel, detrimental reliance, intentional infliction of emotional distress, breach of contract, breach of implied covenant of good faith and fair dealing, conversion, unfair competition, interference with business relations, tortious breach of contract, and unjust enrichment. In August 1999, Meador and MBHS agreed to a settlement in which MBHS paid Meador $352,500. The settlement agreement contained a mutual-release clause and covenant not to sue.
¶ 5. A large factor in the dispute between MBHS and Meador was a $230,000 line of credit from Trustmark, taken out by Meador. After Meador defaulted on the loan, Trustmark filed a complaint against Meador on May 21, 1998, in trial court, asking for $243,828.35 in damages. In response, on July 15, 1999, Meador filed an answer, setoff, and counterclaim against Trustmark, alleging breach of contract, conversion, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, interference with business relations, invasion of privacy, and negligence, and asking for punitive damages of at least $1 million on top of $350,000 in economic losses. On July 10, 2001, the trial court judge entered an order along with a memorandum opinion, granting summary judgment in favor of Trustmark against Meador. On September 7, 2001, a final judgment was entered, granting summary judgment against Meador, and ordering Meador to pay Trustmark $308,839.58. Meador filed a notice of appeal, which ultimately was dismissed.
¶ 6. Meador filed a petition for bankruptcy on June 6, 2002. On July 7, 2004, the bankruptcy court issued a discharge of some of Meador's debts, including the entire judgment in favor of Trustmark. Less than two months later, Meador filed complaints against Trustmark and MBHS.
¶ 7. In response to motions for summary judgment by MBHS and Trustmark, Meador submitted a memorandum in opposition to those motions, along with an affidavit. In the affidavit, Meador asserted that he did not become aware of any fraudulent activities between MBHS and Trustmark until 2004, while MBHS and Trustmark were under federal investigation. Meador claimed he learned this information in 2004 from Brent Farris, a former "principle employee or managing consultant of MBHS," who had "a significant responsibility for transactions which I carried out with them." Meador further asserted that Farris had informed him that:

*1116 [T]here had been an agreement between MBHS and Trustmark National Bank to exert financial duress upon me in order to deprive me of my medical clinic in Byram, Mississippi and also Mobile Physicians Services, a company I had organized. Mr. Farris informed me that there are available through the United States Department of Justice taped conversations between Trustmark and MBHS confirming this fact.
Meador had to submit Farris's possible testimony by affidavit because, at the time of the affidavit and at the time of the hearing, Farris was a fugitive unable to be deposed.
¶ 8. At the February 19, 2009, hearing on motions by MBHS, Hunt, Hart, and Trustmark for summary judgment, and to strike portions of an affidavit submitted by Meador, counsel for MBHS argued that Meador's complaint in this case alleged the same claims-based on the same facts-that were alleged in a 1999 draft complaint sent to MBHS. MBHS argued that the 1999 dispute between Meador and Trustmark was settled for $352,500, with a mutual-release agreement, releasing both sides from any future claims. MBHS also stated that the motion to strike should have been granted for three reasons: (1) Meador's affidavit contained hearsay statements; (2) it was not based on Meador's knowledge; and (3) "there were conclusionary statements in the affidavit with no factual support." Meador responded by asserting that Farris would have supplied the information on which his affidavit was based, but that he had been out of the country and unreachable at the time. Meador also argued that the mutual-release agreement presented by MBHS was not an authentic document, because the "type font on the pages that he supposedly initialed is different from the others."

STANDARD OF REVIEW
¶ 9. This consolidated case was petitioned to this Court based on the following: 1) the trial court's order denying the motion to strike portions of Meador's affidavit; and 2) the trial court's order denying summary judgment in favor of Trustmark and MBHS. A court's grant or denial of a motion to strike an affidavit is subject to an abuse-of-discretion standard of review. Schmidt v. Catholic Diocese of Biloxi, 18 So.3d 814, 832 (Miss.2009). This Court reviews a trial court's grant or denial of a motion for summary judgment under a de novo standard of review. Young v. Smith, 67 So.3d 732, 741 (Miss.2011).

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN ITS REFUSAL TO STRIKE PORTIONS OF MEADOR'S AFFIDAVIT BASED ON HEARSAY.
¶ 9. The trial court abused its discretion in denying Trustmark's and MBHS' motions to strike parts of Meador's affidavit. In response to Trustmark's and MBHS' motions for summary judgment, Meador relied solely upon his own affidavit to support his theories of fraud and fraudulent concealment.[1] Meador's only evidence to support his claim for fraudulent concealment is based on what he learned from Brent Farris. This Court finds that these statements are hearsay, not personal knowledge. In his affidavit, Meador claimed that Trustmark and MBHS conspired against him to damage his financial interests. Specifically, Meador *1117 stated that it was his "belief that Trustmark and MBHS are still actively engaged in a common plan and scheme to damage [his] business, professional practice, credit, reputation, and other business opportunities." Meador stated that, in 2004, he was told by former MBHS consultant Brent Farris that Trustmark and MBHS had entered into a conspiracy to damage Meador's financial interests.[2]
¶ 11. Pursuant to Mississippi Rule of Civil Procedure 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matter stated therein." Miss. R. Civ. P. 56(e) (emphasis added). "While most affidavits are hearsay, they are nevertheless properly considered on summary judgment motions as long as they are based on personal knowledge and set forth facts such as would be admissible in evidence." Levens v. Campbell, 733 So.2d 753, 758 (Miss.1999) (citations omitted). Therefore, portions of affidavits that contain inadmissable testimony or allegations that are not based on personal knowledge must be struck and cannot be considered part of the summary judgment record.
¶ 12. While it may be his "belief," Meador has no proof based on personal knowledge that Trustmark and MBHS ever entered into a conspiracy. Meador based his allegations upon statements made by Farris, a former consultant for MBHS. Specifically, Meador stated that:
Brent Farris informed me in 2004 at about the time of my Amended Complaint, for the first time, that there had been an agreement between MBHS and Trustmark National Bank to exert financial duress upon me in order to deprive me of my medical clinic in Byram, Mississippi and also Mobile Physicians Services, a company I had organized. Mr. Farris informed me that there are available through the United States Department of Justice taped conversations between Trustmark and MBHS confirming the fact.
These statements are inadmissable hearsay and should be excluded from Meador's affidavit. Mississippi Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered into evidence to prove the truth of the matter asserted." M.R.E. 801(c). Although there are some exceptions to the hearsay rule, this hearsay does not fall under any of the recognized exceptions provided in the Mississippi Rules of Evidence.
¶ 13. At the time he filed his complaint and, subsequently, his amended complaint, Meador had no firsthand knowledge or evidence that Trustmark and MBHS had engaged in fraud or fraudulent concealment. These alleged statements by Farris cannot be verified and therefore do not create a genuine issue of material fact for several reasons. First, it is undisputed that Farris was never an employee of MBHS. Second, Farris stopped performing consulting work for MBHS in 1998. Lastly, Farris is a convicted felon who pleaded guilty to bankruptcy fraud. At the time of the summary judgment hearing, he was a fugitive from justice. In Meador's Opposition to Summary Judgment, he did not submit an affidavit from Farris. Instead, he "furnishes his own *1118 sworn statement that this is what his [witness] would say. But such is pure hearsay and Rule 56(e) declares such to be incompetent in support ofor in opposition tosummary judgment." Walker By & Through Walker v. Skiwski, 529 So.2d 184, 187 (Miss.1988).
¶ 14. This Court finds that the trial court abused its discretion in denying Trustmark's and MBHS' motions to strike portions of the affidavit.
The purpose of a motion for summary judgment is to determine the need for a trial. To serve this purpose, the evidence offered in support of or in opposition to the motion must be admissible at trial. If inadmissible evidence could defeat a summary judgment motion but not support a jury verdict, the purpose of Rule 56to avoid unnecessary trialswould not be served.
Jeffrey Jackson, Admissibility at Trial of Materials Presented, Mississippi Civil Procedure § 11:22 (Rev.2009). Given the fact that these portions of the affidavit are hearsay, this Court reverses the order of the trial court denying Trustmark's and MBHS' motions to strike portions of Meador's affidavit.

II. WHETHER THE TRIAL COURT ERRED IN DENYING TRUSTMARK'S AND MBHS' MOTIONS FOR SUMMARY JUDGMENT.
¶ 15. These statements are the only evidence supporting Meador's fraudulent-concealment claim and should be excluded based on hearsay. Without these statements, Meador has no valid claims against Trustmark or MBHS.[3] Therefore, we find that the trial court erred in its denial of summary judgment in favor of Trustmark and MBHS.
¶ 16. Meador's claims arise from the same series of promissory notes he executed with Trustmark in the late 1990s. Therefore, all of Meador's claims are time-barred by the one-year and three-year statute of limitations of Mississippi Code Sections 15-1-35 and 15-1-49(1).[4] Miss. Code Ann. §§ 15-1-35 and 15-1-49(1) (Rev.2003). In his complaint, filed in August of 2004, Meador listed intentional infliction of emotional distress as a cause of action. In accordance with Mississippi Code Section 15-1-35, the statute of limitations for an intentional-infliction-of-emotional-distress claim is one year after the cause of action accrued. Jones v. Fluor Daniel Servs. Corp., 32 So.3d 417, 423 (Miss.2010). Meador's claim accrued in 1999 at the latest. Meador also listed contract-related claims in his 2004 complaint. These also accrued in 1999 at the latest. Pursuant to Mississippi Code Section 15-1-49(1), "[i]n a contractual claim, a cause of action accrues on the date of actual injury, the date the facts occurred which enable the Plaintiffs to bring a cause of action." CitiFinancial Mortgage Co., Inc. v. Washington, 967 So.2d 16, 19 (Miss. 2007) (citations omitted). Trustmark and MBHS both used these statutes of limitations as a defense in their motions for *1119 summary judgment. We agree that the statute of limitations bars all claims listed in Meador's complaint.
¶ 17. In his attempt to toll the statute of limitations, Meador claims that Trustmark and MBHS fraudulently concealed the causes of action listed in his complaint. Section 15-1-67 of the Mississippi Code provides that:
If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.
Miss.Code Ann. § 15-1-67 (Rev.2003). When a plaintiff uses fraudulent concealment to toll the statute of limitations, he must prove the necessary elements of fraudulent concealment in order to defeat a defendant's motion for summary judgment. Sanderson Farms Inc. v. Ballard, 917 So.2d 783, 790 (Miss.2005).[5] To establish a claim of fraudulent concealment, "there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." Reich, 526 So.2d at 552 (citations omitted). The party is required to show that (1) some affirmative act of conduct was done and prevented discovery of the claim; and (2) due diligence was performed on its part to discover the claim. Sanderson Farms Inc., 917 So.2d at 790. This Court has also has held that fraudulent concealment "must be pled with specificity and particularity under [Miss. R. Civ. P.] 9(b)." State Indus., Inc. v. Hodges, 919 So.2d 943, 946 (Miss.2006). Meador did not satisfy either requirement, nor did he plead any claim with particularity. Therefore, this Court reverses the trial court's ruling, thereby granting Trustmark's and MBHS' motions for summary judgment.

A. Meador did not point to any affirmative act by Trustmark and MBHS that prevented him from discovering his claims.
¶ 18. Meador has not presented any evidence that Trustmark or MBHS performed any act to prevent discovery of his alleged claims. Meador states that "he did not have and had no means to obtain relevant information" regarding his fraudulent-concealment claim. However, he cannot satisfy the "affirmative act" requirement with mere allegations that the other party had complete control of the information. See Sanderson Farms Inc., 917 So.2d at 790. "The party opposing the motion must be diligent and may not rest upon allegations or denials in the pleadings but must set forth specific facts showing a genuine issue for trial." Zurich Am. Ins. Co. v. Goodwin, 920 So.2d 427, 432 (Miss.2006) (citations omitted).
¶ 19. With regard to Meador's claims against Trustmark, Trustmark argues that the claims not involving conspiracy are barred by the doctrine of res judicata.[6] In his opposition to summary judgment, Meador offered no evidence to show how Trustmark or MBHS fraudulently concealed these claims. The only evidence he provided was his own affidavit, which consisted of hearsay and speculation. Therefore, Meador did not meet the first requirement for fraudulent concealment.

*1120 B. Meador did not show he exercised due diligence to discover the claims.

¶ 20. Meador did not present any evidence at the summary judgment hearing to show he exercised due-diligence in discovering the present claims. He merely stated he was unable to discover any information about the alleged claims. He did not show any conduct that would be considered an exercise of due diligence. This Court has held that a plaintiff cannot satisfy the due diligence requirement if he had information regarding the claim and failed to take action before the statute of limitations expired. Andrus v. Ellis, 887 So.2d 175, 181 (Miss.2004). In February 1999, Meador's attorney stated that he had "significant evidence that other parties, including Trustmark Bank, have colluded with MBMC in seeking to destroy Dr. Meador and take his business from him." Meador had notice of an alleged conspiracy between Trustmark and MBHS in 1999. However, Meador waited five years to bring an action against both Trustmark and MBHS. Meador's lack of due diligence bars any claim based on fraudulent concealment.

III. THE MUTUAL RELEASE AND TERMINATION AGREEMENT BETWEEN MEADOR AND MBHS
¶ 21. Meador attempts to use the release agreement that he signed with MBHS as evidence of fraud. Specifically, Meador claims that he did not sign the portions of the Mutual Release and Termination Agreement that discussed the prohibition of future claims against MBHS. In addition, Meador states he cannot provide his own copy of the agreement he signed because he "turned over various records to the Federal Bureau of Investigation and the United States Attorney who were investigating MBHS at the time." This issue is without merit because the release agreement is irrelevant if Meador cannot provide evidence of fraudulent concealment. Without fraudulent concealment, all of Meador's claims are time-barred by the statute of limitations.

CONCLUSION
¶ 22. We find that the trial court abused its discretion in refusing to strike portions of Meador's affidavit. The trial court also erred in denying Trustmark's and MBHS' motions for summary judgment. Therefore, this Court reverses the denial of the motion to strike portions of Meador's affidavit and reverses the trial court's denial of summary judgment rendering summary judgment in favor of Trustmark and MBHS.
¶ 23. REVERSED AND RENDERED.
CARLSON AND DICKINSON, P.JJ., RANDOLPH AND KING, JJ., CONCUR. KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR., J. WALLER, C.J., AND PIERCE, J., NOT PARTICIPATING.
KITCHENS, Justice, Concurring in Result Only:
¶ 24. I agree that Dr. Meador's claims are barred by the statute of limitations, and that he has not demonstrated any fraudulent concealment that would otherwise toll the limitations period. Thus, the trial court erred by denying the defendants' motions for summary judgment. However, because I cannot fully join the majority's analysis, and because it addresses issues that are not necessary to the disposition, I respectfully concur in result only.
¶ 25. First, clarity requires a brief discussion of the facts and procedural history *1121 of this case. In 2004, Dr. Meador sued three sets of defendants: the Trustmark defendants, the Mississippi Baptist Health Systems, Inc. (MBHS) defendants, and a third set of defendants who are not parties to this appeal.[7] Dr. Meador asserted various claims against the defendants, all arising from allegations that the defendants had conspired to deprive Dr. Meador of his medical practice.
¶ 26. Notably, the 2004 lawsuit was not the first time Dr. Meador had accused Trustmark and MBHS of conspiring to deprive him of his business. In the 1990s, Dr. Meador had acquired various loans from Trustmark in connection with his Byram clinic. In 1996, MBHS purchased that clinic, and, according to Dr. Meador, MBHS had induced him to sell the clinic to MBHS by promising to purchase his company, Mobile Physician Services, Inc. (MPS), for an amount that would have covered his indebtedness to Trustmark. Thereafter, on September 29, 1997, Dr. Meador renewed his Trustmark debt by executing a promissory note in the amount of $230,000; but, at that time, MBHS had not yet purchased MPS.
¶ 27. On May 21, 1998, Trustmark sued Dr. Meador in the Hinds County Circuit Court, First Judicial District, seeking to collect on the $230,000 promissory note. In response, on July 15, 1999, Dr. Meador filed a setoff and counterclaims, alleging, in relevant part, that:
During early 1996 Trustmark agreed to extend a line of credit of up to $50,000.00 to Meador for the purchase and operation of a medical clinic located in Byram, Mississippi.
Based upon that loan commitment, Dr. Meador entered into an agreement to purchase and lease the facility in Byram and to operate it as a medical clinic in association with [MBHS].
During the course of purchase and operation of the clinic by Meador, Trustmark refused to loan the full amount of the line of credit which it had given to Dr. Meador. As a result, Dr. Meador's clinic suffered serious cash flow difficulties which were a significant contributing cause of Dr. Meador's forced sale of his clinic to [MBHS].
During the course of the purchase and operation of the Byram clinic, Trustmark also permitted another entity, Central Medical Management, Inc.,[[8]] to borrow money against the credit line which it had established for Dr. Meador without the knowledge or permission of Dr. Meador.
¶ 28. On February 17, 1999, while the action between Trustmark and Meador was pending, Dr. Meador's attorney sent a draft complaint, with a cover letter, to counsel for MBHS. The complaint and cover letter alleged, in essence, that MBHS had engaged in a scheme "to strip the Byram clinic and MPS away from Dr. Meador at salvage prices, leaving Dr. Meador *1122 broke and essentially in a position of serfdom to [MBHS]." The letter went on to say "[w]e also have significant evidence that other parties, including Trustmark Bank, have colluded with [MBHS] in seeking to destroy Dr. Meador and take his business from him." (Emphasis added.) Dr. Meador also offered, as part of a proposed settlement, to "turn over [MPS] to [MBHS]." It is undisputed that in August 1999, Meador and MBHS entered into a settlement agreement in connection with the letter of February 17, 1999, but the parties disagree over the terms of that agreement.
¶ 29. As for the case between Dr. Meador and Trustmark, the trial judge granted summary judgment in favor of Trustmark on July 11, 2001. In connection with the final judgment in favor of Trustmark, the trial judge entered an eighteen-page opinion, finding that Dr. Meador had waived all defenses and counterclaims. According to the opinion, "Meador's own testimony establishe[d] that he knew or should have known of the claims and defenses potentially available to him set forth in his Amended Counterclaim prior to executing a final renewal note." In other words, the trial court found that Dr. Meador knew or should have known of his claims against Trustmark before September 29, 1997. Dr. Meador appealed the judgment to this Court, but the appeal was dismissed voluntarily at his request under Mississippi Rule of Appellate Procedure 42(b).
¶ 30. Returning to the present case, Trustmark and MBHS filed separate motions for summary judgment, arguing that, because the 2004 complaint was based on alleged conduct that had occurred in 1999 or before, Dr. Meador's claims were barred by res judicata, accord and satisfaction, and the statute of limitations. In response, Dr. Meador argued that: the copy of the August 1999 release that was attached to the defendants' motions was not authentic; the release did not extend to the claims asserted in the 2004 complaint; and that Dr. Meador had not discovered the latest cause of action until "shortly before December 2004;" thus, the statute of limitations had been tolled.
¶ 31. Following a brief hearing, the trial judge summarily denied Trustmark's and MBHS' motions for summary judgment, and both sets of defendants successfully petitioned this Court for interlocutory review. The two appeals were consolidated by this Court.
¶ 32. As for the merits of this appeal, Dr. Meador's claims against Trustmark and MBHS clearly are barred by the statute of limitations. Although Dr. Meador's affidavit vaguely referenced an ongoing conspiracy between Trustmark and MBHS that caused him harm, all of the acts alleged in his complaint refer to conduct that occurred in 1999 and before. Thus, Dr. Meador's only defense to the defendants' argument, that his 2004 complaint was filed outside the statute of limitations, is that Trustmark and MBHS somehow acted fraudulently to conceal his cause of action.
¶ 33. Mississippi Code Section 15-1-67 provides:
If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.
Based on Dr. Meador's February 17, 1999, letter to MBHS and the attached draft complaint, as well as his pleadings in response to Trustmark's collection action, Dr. Meador knew in 1999 of the facts underlying his 2004 complaint. Despite *1123 his claim that he "first learned of the facts and circumstances pleaded in the Amended Complaint" in 2004, he had made allegations of a conspiracy between Trustmark and MBHS as early as February 17, 1999. The letter bearing that date from his attorney to MBHS plainly alleged, "[w]e also have significant evidence that other parties, including Trustmark Bank, have colluded with [MBHS] in seeking to destroy Dr. Meador and take his business from him."[9] Dr. Meador has yet to explain how the conspiracy he referred to in 1999 is different from the conspiracy alleged in his 2004 complaint. Thus, his case against Trustmark and MBHS is barred by the statute of limitations.
¶ 34. Even with the testimony that Meador expected from Brent Farris, Dr. Meador cannot demonstrate any fraudulent activity on behalf of Trustmark and MBHS that would have prevented his discovery of the alleged conspiracy. According to Dr. Meador's affidavit, Farris could have provided evidence that "there had been an agreement between MBHS and [Trustmark] to exert financial duress upon me in order to deprive me of my medical clinic in Byram, Mississippi and also Mobile Physician Services, a company I had organized." However, it is apparent from his prior dealings with Trustmark and MBHS that he knew of the alleged conspiracy in 1999. While Farris's anticipated testimony might have offered more support for his claims, Dr. Meador did not discover any new causes of action through Farris. Thus, whether the trial court erred by refusing to strike this portion of Dr. Meador's affidavit does not affect the outcome.
¶ 35. Finally, as for Dr. Meador's arguments regarding the release, I disagree that he is attempting to use it "as evidence of fraud." Maj. Op. 21. Although his brief is confusing, his arguments about the authenticity of the document are in response to MBHS' argument that the release barred any claims under the doctrine of accord and satisfaction. MBHS attempted to make this argument below, but on appeal, focuses on the statute of limitations. As with Farris's testimony, the validity of the release does not affect the statute of limitations.
¶ 36. For the foregoing reasons, Dr. Meador's claims against Trustmark and MBHS are barred by the statute of limitations. Because I cannot fully join the majority's analysis of the issues, I respectfully concur in result only.
LAMAR, J., JOINS THIS OPINION.
NOTES
[1] Meador also submitted a letter from MBHS' attorney Jack Dunbar, but this letter is relevant only to the terms of the agreement between MBHS and Meador and does not support any of Meador's allegations of fraud.
[2] Although Meador did not bring a conspiracy claim against Trustmark or MBHS in the late 1990s, his attorney stated in a letter dated February 1999 that he had "significant evidence that other parties, including Trustmark Bank, have colluded with MBMC in seeking to destroy Dr. Meador and take his business from him."
[3] Fraudulent concealment would toll the statute of limitations on Meador's claims.
[4] With the exception of claims involving fraud or conspiracy, all alleged claims listed in the complaint accrued in February 1999 at the latest. It is undisputed that Meador had no involvement with either Trustmark or MBHS after August 2009. Meador's claims include: (1) breach of fiducial duties; (2) interference with fiduciary duties; (3) interference with contract rights; (4) interference with prospective business advantage; (5) intentional infliction of emotional distress; (6) deceit; (7) fraud; (8) retaliatory discharge; (9) conspiracy; (10) gross negligence; (11) state law antitrust claims; (12) tort arising out of contract; and (13) breach of covenants of good faith and fair dealing.
[5] See also Stephens v. Equitable Life Assurance Soc'y of U.S., 850 So.2d 78, 83-84 (Miss. 2003); Reich v. Jesco, Inc., 526 So.2d 550, 552 (Miss.1988).
[6] Meador brought the other claims in 1999-2001 as counterclaims against Trustmark and was unsuccessful.
[7] The Trustmark defendants are Trustmark National Bank, Frank Hart, and Alvis Hunt. The MBHS defendants are Mississippi Baptist Health Systems, Inc., C. Gerald Cotton, Lu Harding, Charles Harrison, Eric A. McVey, III, M.D., Kurt Metzner, and James P. Wigley. The defendants who are not parties to this appeal are Central Medical Management, Inc., Jackson Medical Clinic, Inc., Jackson Medical Clinic, P.A., Jackson Medical Clinic, LLC, Premier Medical Management of Mississippi, Inc., James C. Bethea, William A. Causey, M.D., and M. Kent Strum.

Unless otherwise noted in this opinion, "Trustmark" and "MBHS" refer to those entities and their individual agents/employees who were named as parties in the current lawsuit.
[8] According to his 2004 compliant, Central Medical Management, Inc., was "a controlled affiliate of [MBHS] and Jackson Medical Clinic."
[9] Notably, in 1999, Dr. Meador was represented by the same law firm which filed the present complaint.