IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2019

Lyle W. Cayce
Clerk

No. 18-60726

CARLISLE 2010 HISTORIC TAX CREDIT FUND II LIMITED
PARTNERSHIP,

      Plaintiff - Appellant

v.

REGIONS BANK,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-424

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

PER CURIAM:*

Carlisle 2010 Historic Tax Credit Fund II Limited Partnership ("Carlisle") appeals the district court's grant of summary judgment on limitations. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60726

I.

Oscar De Leon, a tenant in the Dickies Building in Jackson, Mississippi, got wind of the building owner's plans to renovate. DeLeon and the owner teamed up and got a $2.1 million construction loan from Regions Bank. When that ran out, De Leon sought additional financing.

He succeeded in finding two new funding sources in June 2010. The first came from Carlisle, a limited partnership run by Eric Darling. Carlisle proposed to provide structured cash injections in exchange for the tax credits that would be earned for renovating the building and a stake in the entity that owned the building. The second came from Regions, which committed to increase its loan to $2.4 million. Both deals closed on October 24, 2010, and Carlisle delivered its first portion of capital that same day.

According to De Leon, the difficulties began in February 2011 when he requested a draw on the modified Regions loan but was turned down. De Leon testified that Regions didn't give a reason. The record does not precisely establish when Darling (and thus Carlisle) found out about Regions' refusal of the draw request, but it is undisputed that De Leon let him know by mid-2012 at the latest.

Eventually, De Leon—both individually and on behalf of the entity created to renovate the building—sued Regions for breach of contract. Carlisle did not join the action. The suit ended with a summary judgment for Regions, a ruling we affirmed. *See 736 Bldg. Owner, L.L.C. v. Regions Bank*, 686 F. App'x 273, 275 (5th Cir. 2017) (per curiam).

Through discovery in that case, De Leon received internal Regions documents suggesting that Regions never intended to make payments under the modified loan. Five days before Regions issued its commitment letter, a Regions officer wrote in the bank's loan history notes, "This loan will not be funded, for commitment letter purposes only." Another officer added, after the

No. 18-60726

commitment letter but before the closing, that "there is a clause in history text that state[s] this loan approval is strictly to generate a commitment letter," and that "there will be no additional construction loan for this customer."

Carlisle learned of the loan history notes when they were produced to De Leon in August 2015. It filed a motion to intervene in the De Leon lawsuit, which was denied by the district court in part because Carlisle waited until May 2016 to file the motion. *736 Bldg. Owner, LLC v. Regions Bank*, 2016 WL 3079781, at *2 (S.D. Miss. May 31, 2016).

Carlisle then filed this suit on June 6, 2016, asserting a fraud claim based on Regions' "agreeing to commit additional funds to the construction project in the amount of $300,000, when in reality, it had no present intention of doing so at the time." Its theory is that Regions committed to a fake loan "in order to induce Carlisle to proceed with the simultaneous closing of the tax credit financing." Carlisle seeks damages for its financial losses on the project. It claims it "never would have invested . . . had it known Regions' modified loan was actually a sham."

Regions moved for summary judgment contending that Carlisle's claims were barred by Mississippi's three-year statute of limitations. *See* MISS. CODE ANN. § 15-1-49. In opposition, Carlisle argued that its claim was timely because Regions fraudulently concealed the cause of action, *see id.* § 15-1-67, and Carlisle neither knew nor could have discovered Regions' "real reason" for refusing to fund the modified loan until the documents were produced to De Leon in August 2015. The district court granted summary judgment, and Carlisle appeals.

## II.

Carlisle argues that the district court erred when it ruled both (1) that Carlisle's claim "accrued" under section 15-1-49 by mid-2012 and (2) that Carlisle had not shown evidence to support tolling for fraudulent concealment

3

No. 18-60726

under section 15-1-67. We review the two issues in turn, and because the district court granted summary judgment, we do so de novo. *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). We apply Mississippi law in this diversity action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

A.

Section 15-1-49 governs fraud claims in Mississippi. *Anderson v. LaVere*, 136 So. 3d 404, 411 (Miss. 2014). It reads:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
>
> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
>
> . . .

MISS. CODE ANN. § 15-1-49. As Carlisle sued on June 6, 2016, its claim is thus time-barred unless it "accrued" later than June 6, 2013.

A cause of action for fraud ordinarily "accrues upon the completion of the sale induced by [the] false representation, or upon the consummation of the fraud." *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 509 (5th Cir. 2008) (quotation omitted). But Carlisle argues that it can avail itself of the discovery rule in section 15-1-49(2) because, while it knew in 2012 that Regions had refused to fund the modified loan, it did not learn until 2015 that Regions had never intended to do so.

The district court did not address section 15-1-49's discovery rule. In response to Carlisle's motion for reconsideration, it determined that Carlisle's bare statement in its summary judgment opposition that "there are genuine issues of material fact as to when Carlisle's claims accrued" was insufficient to raise the issue. We agree. Carlisle could not use its motion for reconsideration to raise "legal theories[] or arguments that could have been offered or raised

4

before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004).

But even if this conclusion were wrong, Carlisle's arguments fail on the merits. The Mississippi Supreme Court has recently clarified prior cases that raised questions about how the discovery rule works by stating that, although its caselaw is "not always a model of consistency," the "plain language of the statute [means] that the cause of action accrue[s] upon discovery of the injury, *not discovery of the injury and its cause*." *Angle v. Koppers, Inc.*, 42 So. 3d 1, 5 (Miss. 2010);[1] *see also Brown v. McKee*, 242 So. 3d 121, 127–28 (Miss. 2018) (noting, in a fraud case, that section 15-1-49(2) permits tolling only in actions "involv[ing] latent injury or disease" (alteration in the original) (quoting § 15-1-49(2))); *Am. Optical Corp. v. Estate of Rankin*, 227 So. 3d 1062, 1068 (Miss. 2017) ("Knowledge of the cause of the injury is irrelevant to the analysis; rather, the inquiry is when the plaintiff knew or should have known of an injury."). *But cf. Bullard v. Guardian Life Ins. Co. of Am.*, 941 So. 2d 812, 815 (Miss. 2006) (suggesting that a fraud claim did not accrue until the plaintiff "was or should have been aware of the fraud," without reference to subsection (2) of section 15-1-49)).[2]

---

[1] As the Mississippi Supreme Court has explained, section 15-1-49(2)'s focus on when an injury is discovered is illuminated by the discovery rule for medical malpractice claims, which more expansively tolls the accrual date until "the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." MISS. CODE ANN. § 15-1-36(2); *see Caves v. Yarbrough*, 991 So. 2d 142, 155 (Miss. 2008) ("Thus, comparing the discovery rules in the medical-malpractice statute and [section 15-1-49(2)'s] 'catch-all' statute, we have one which focuses on discovery of the date of the wrongful conduct, and another which focuses on the date of discovery of the injury or disease.").

[2] Although it suggested that it matters when the plaintiff discovered that the defendant's conduct was fraudulent, *Bullard* was more about a delay in damages, without which there is no cause of action for fraud. The court noted that the fact that the plaintiff did not suffer damages until ten years after the fraud was "more important[]" than the fact that he did not learn of the fraud until ten years later. 941 So. 2d at 815. It went on to clarify that if the plaintiff knew of the fraud when it was committed, "the outcome would be no different, for without injury, no action lies." *Id.* Tellingly, the dissent framed the decision as

Carlisle's argument that it "did not suspect any wrongdoing on Regions' part until August, 2015" is thus unavailing. Its alleged injury occurred either when Regions falsely represented that it would fund the loan (thereby fraudulently inducing Carlisle's investment), or when Regions ultimately refused De Leon's request for a draw (thereby forcing Carlisle to inject more money into the project or lose everything). In either case, Carlisle concedes it knew of its injury in mid-2012, more than three years before this lawsuit was filed. The district court did not err in its accrual date determination.

B.

Carlisle next argues that the district court erred in ruling that Carlisle had failed to support its fraudulent concealment theory. Mississippi's fraudulent concealment statute provides:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

MISS. CODE ANN. § 15-1-67. To toll the statute of limitations, that statute imposes on Carlisle "a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was [performed] on their part to discover it." *Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 84 (Miss. 2003). Because we agree with the district court's disposition of the affirmative act requirement, we do not address whether Carlisle was sufficiently diligent.

The only "affirmative acts" of concealment Carlisle identified in its opposition to Regions' limitations argument were (1) Regions' misrepresentation that it would commit additional money to the project and

---

founded on when the plaintiff suffered damages, not when he discovered the fraud. *See id.* at 816 (Easley, J., dissenting).

No. 18-60726

(2) Regions' internal loan documents reflecting that it would not do so. We agree with the district court that these were not affirmative acts of concealment within the meaning of section 15-1-67.[3]

Regions' misrepresentation is not enough because an affirmative act of concealment "cannot be both an act of fraud in the inducement and an act of fraudulent concealment." *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 438 (Miss. 2010). It must be "designed to prevent and [in fact] prevent discovery of the claim," *Andrus v. Ellis*, 887 So. 2d 175, 181 (Miss. 2004), and thus must be distinct from the wrongful conduct on which the claim is based. The whole idea of Carlisle's fraud claim is that Regions said one thing with the intent to do another. The alleged fraud is what Regions said, and that fraud cannot also serve as the basis for tolling under section 15-1-67.

Neither were Regions' internal loan documents affirmative acts of concealment, for the simple reason that they were not designed to prevent discovery of the fraud. *See Andrus*, 887 So. at 181. If anything, writing down the fraudulent plan would work to reveal the fraud, not conceal it. To the extent that Carlisle argues that it was prevented from learning of the fraud because only Regions had access to its internal documents, plaintiffs "cannot satisfy the 'affirmative act' requirement with mere allegations that the other

---

[3] The district court reasoned in part that neither was an affirmative act "subsequent" to the tort itself. *See Ross v. Citifinancial, Inc.*, 344 F.3d 458, 463–64 (5th Cir. 2003) ("Mississippi law is unambiguous: Plaintiffs must prove a subsequent affirmative act of fraudulent concealment to toll the limitations."). In an unpublished decision, we recently called into doubt whether the affirmative act must in fact succeed the tort. *Full House Resorts, Inc. v. Boggs & Poole Contracting Grp., Inc.*, 674 F. App'x 404, 405–06 (5th Cir. 2017) (per curiam). Since then, the Mississippi Supreme Court appears to have confirmed, at least in fraud cases, that the affirmative act must come after the fraud. *See Brown*, 242 So. 3d at 129 (holding that discovery on "what happened *before*" fraudulent inducement was inconsequential to fraudulent concealment argument). In any event, our decision does not turn on chronology.

party had complete control of the information." *Trustmark Nat. Bank v. Meador*, 81 So. 3d 1112, 1119 (Miss. 2012).

Carlisle also argues that by closing the deal outlined in its commitment letter, Regions fraudulently concealed the misrepresentation in the letter. That is, the letter was the fraud, and the closing was the affirmative act of concealment. It tried the same theory in a motion for reconsideration, but the district court rejected it because Carlisle failed to raise it in its summary judgment response. We need not reach the forfeiture question because we reject Carlisle's theory on its merits. Carlisle points to no evidence that the closing documents said or did anything other than memorialize the deal detailed in the commitment letter. The closing was thus part of the alleged fraud in the inducement, not a distinct act designed to conceal it. *See Archer*, 550 F.3d at 511 (rejecting alleged affirmative acts that "relate[d] to the transactions themselves"). This is thus not a case like *Whitaker*, in which the defendant fraudulently induced investment by showing the plaintiffs false financial documents, then later concealed that act by entering into distinct transactions with the plaintiffs "predicated on" the accuracy of the financials. 32 So. 3d at 438. Here Carlisle tries to use different documents that papered up the same transaction and then characterize one as the fraud and one as the affirmative act of concealment. If that were enough, any transaction complicated enough to require multiple documents would be immune from the rule that the same act cannot be both the underlying fraud and the fraudulent concealment.

Carlisle last raises the theory that when the Regions officer told De Leon it would not fund the loan, but did not tell him why, it affirmatively concealed the fraud. This theory is brand new—Carlisle omitted it not only from its summary judgment opposition but also from its motion for reconsideration. So, this argument is waived: "If a party fails to assert a legal reason why summary

judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (internal citations and quotation omitted); *Frank C. Bailey Enters., Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978) (per curiam).[4]

AFFIRMED.

---

[4] Even if we were to evaluate this issue under plain-error review, Carlisle would not prevail. Regions' *omission* of information was not an *affirmative* act. There may be instances in which a fiduciary's silence may suffice. *See Van Zandt v. Van Zandt*, 86 So. 2d 466, 468, 470 (Miss. 1956). Lenders, however, do not ordinarily owe fiduciary duties to creditors under Mississippi law, and Carlisle does not point us to any evidence of special factors warranting departure from that ordinary rule. *See Hartman v. McInnis*, 996 So. 2d 704, 708–09 (Miss. 2007). Regions' omission thus cannot fairly be deemed an "affirmative act of conduct" distinct from the underlying alleged fraud and designed to prevent its discovery. *Trustmark*, 81 So. 3d at 1119.